MARVIN, Judge.
Charles Freeman and John Lee Capers appeal their convictions and sentences for the crimes of simple burglary of Palais Royal, a Shreveport clothing store, and of the felony unauthorized use of a Dodge .van belonging to Tait Dodge in the same city. LRS 14:62, 68.
Defendants’ assignments seek review of the sufficiency of the evidence to convict, of the record for errors patent, and of their respective sentences for constitutional ex-cessiveness.
We find no error in any respect and affirm the convictions and the sentences.
FACTS
About 4:00 a.m., November 15, 1985, the burglar alarm at the Palais Royal store in Shreve City shopping center on Shreveport-Barksdale Highway which was connected to the Shreveport Police Department indicated that a burglary was in progress. Officer James Silva, who was driving nearby on Barksdale Highway while on patrol, immediately responded to the police radio dispatch. He saw a Dodge van drive away from its parked position directly in front of the store.
The van ran a red light and attempted to elude Officer Silva who followed with his siren and flashing lights activated. A high-speed chase ensued. Silva called for assistance from other police officers. A moment later and about 20 blocks from the Shreve City shopping center, the van abruptly drove into the south parking lot of the Stone Vista apartments on East Jordan street. There, while the van was still slowly moving, the driver and three occupants were seen by Silva to hastily depart and run from the van through muddy areas of the parking lot and grounds through and between the buildings of the apartment complex.
Continuing to alert by radio other police who were converging on the scene, Officer Silva described the four as black males, two of whom were wearing beige jackets and blue jeans, one in a burgundy sweatsuit, and the other in dark clothing.
Silva chased John Lee Capers through the apartment complex, losing sight of him only for about “3-5 seconds,” before he caught and apprehended him. When apprehended, Capers was wearing a beige jacket and blue jeans and had a fresh scratch or slight cut on his right hand. Capers was sweating, breathing heavily, and had mud on his shoes.
When Capers ran around the comer of an apartment building, Silva, who was about 60 feet away, momentarily lost sight of him but noticed at the same time a police patrol car approaching that building from the direction in which he and Capers were running. Capers, obviously reversing his direction because of the patrol car, then “backed” from around the building and again into the sight of Silva who immediately caused him to halt and submit to arrest. This occurred in the “3-5 seconds” mentioned by Silva. Silva said he saw Capers depart the van from its passenger [or right] side.
Officer Moore, who had driven and departed from the approaching patrol car, saw Capers back away from Moore’s approach and into the sight of Officer Silva, who was still in pursuit. Moore described his observation of Capers’ path and his assist of Silva apprehending Capers as occurring in “15-20 seconds.”
*1281 Officer Mariam, responding to Officer Silva’s dispatch that the van had been driven into the south side parking lot of the Stone Vista apartments, drove to the north side of the apartment complex which he knew was fenced to allow only one exit on the north side. There he saw Charles Freeman running through the complex and attempting to hide behind the screen door at the locked entry of Apt. No. 121. Mariam arrested Freeman, who was wearing a beige jacket and blue jeans. Freeman told Mariam he was going to “see” the people who lived in that apartment and was trying to get them to come to the door. Mariam knocked and caused the three adult residents to respond. Each denied knowing Freeman, notwithstanding Freeman’s assertions to them that “you know me.” Officer Glover, who was assigned to ride with Sgt. Mariam, corroborated Mariam’s testimony. The other two men who fled from the van successfully escaped from police who were chasing them.
The investigation revealed that a front display safety glass window of the Palais Royal store had been smashed and broken, through which the burglars gained entry. Heavy blows were required to break through this safety glass. Metal chains securing leather wearing apparel had been cut with a bolt cutter. An officer who entered the van to turn off its ignition saw that the van was loaded with new merchandise, including leather goods, with price tags affixed.
The van, which was thereafter formally impounded and searched, was discovered to have been stolen from Tait Dodge in Shreveport 24-48 hours before the burglary. Over $6,000 worth of merchandise, identified by Palais Royal employees, was found in the van. Bolt cutters and a sledgehammer were found in the van. A fingerprint of Charles Freeman was found on the left doorpost or driver’s side of the van. The van was valued at more than $10;000.
Testimony was elicited from the officers who engaged in the chase and the investigation. The operations manager of Palais Royal and the business manager of Tait Dodge also testified to establish the other elements of the respective crimes which are not at issue here, unauthorized entry, theft, and use. Neither defendant contended or argued against these elements being proved. Each defendant argues that he was merely a victim of the circumstance of visiting or being at the apartment complex when police arrived.
Neither defendant lived at the apartment complex where they were apprehended. Neither defendant associated himself with the other. Officers testified that Freeman explained to them that he lived nearby and that he “knew” the people who lived in Apt. 121. The three adult residents who lived in Apt. 121, however, denied, to Freeman and the police, and later to the jury, that they “knew” or had seen Freeman before they were aroused about 4:00 that morning.
Freeman, under police interrogation after his arrest, said that he was driving his 1972 Oldsmobile on that morning when it stopped running and he was seeking assistance at the Stone Vista apartments. After Freeman was in jail, he agreed to give his car keys to visitors at the jail who had complained that Freeman’s car was blocking their driveway in the neighborhood. Officer Price thereafter followed these visitors to Freeman’s car and saw one of them enter, start, and drive the car, without mechanical or starting difficulty, to another nearby parking spot. Price testified to this effect before the jury.
Defendants did not testify and presented no witnesses. Defense counsel, arguing to the jury, emphasized Freeman’s story to the police and the fact that “nobody took the time to find out if Johnny Capers had an uncle living in that area [of the Stone Vista apartment complex].”
SCOPE OF REVIEW
Circumstantial evidence is not inherently less reliable than direct evidence. The testimony of several eyewitnesses that no dog walked across a field may be overcome by dog tracks in the mud. State v. McFadden, 476 So.2d 413, 424 (La.App. 2d Cir.1985) writ denied, and its authorities.
*1282 The rules associated with circumstantial evidence such as LRS 15:438 are simply tools or guides for the jury and methodology for the reviewing court to determine whether the rational juror under the Jackson v. Virginia standard might have concluded that a defendant’s alternative hypothesis of innocence is sufficiently UN reasonable so as to allow the appellate court to conclude that the evidence, viewed most favorably in support of the verdict, proves a defendant’s guilt beyond a reasonable doubt.
In some cases [State v. Graham, 422 So.2d 123 (La.1982) ], a defendant’s hypothesis or theory of innocence may be found to be remote, treasonable, and inconsistent with the totality of the evidence when compared with the prosecution’s hypothesis of guilt. In other cases [State v. Shapiro, 431 So.2d 372 (La.1982)], and under the same comparison, a defendant’s hypothesis may be found not remote or unreasonable, but just as reasonable and consistent with the totality of the evidence as the prosecution’s hypothesis. McFadden, supra, pp. 424-525. Each case, or course, must be determined on its own facts.
The jury obviously did not believe what Freeman told police. The hypothesis argued by each defendant could have been found by the jury to have been remote, unreasonable and logically inconsistent with the totality of the evidence when compared with the State’s hypothesis. We find the jury’s conclusions in this respect are reasonable and are clearly supported by the evidence.
The evidence supports the conclusion that Freeman and Capers were “using” the stolen Dodge van on the morning in question to burglarize Palais Royal and that they, with others, were “caught” during the commission of the crimes after attempting to flee and escape from the pursuing officers.
The van was in the sight of Officer Silva from the time it drove from Palais Royal until Silva undertook to chase Capers on foot. Capers was in the sight of either or both Officers Silva and Moore from the time he fled from the slowing van until he was apprehended. He was breathing hard and was sweating after the chase. His shoes were muddy. It is not unreasonable or illogical to associate the scratch on Capers’ hand with the display window at Pa-lais Royal that was apparently smashed and broken with the sledgehammer to facilitate the burglary.
Similarly, the jury could have concluded Freeman’s “use” of the van. Silva saw and reported a person dressed as Freeman was dressed depart the left or driver’s side of the van. Freeman’s fingerprint was found on that side of the van. Sgt. Mariam saw Freeman running from the direction where the van was abandoned and saw him attempt to hide between the screen door and the locked door of Apt. 121 before he apprehended Freeman. Freeman’s lie to the police about knowing the residents of Apt. 121 was proved.
It does not strain credulity, logic, or reason to conclude, on the direct factual and circumstantial or factual-inferential evidence in this record that the guilt of each defendant was proved beyond a reasonable doubt to the satisfaction of the Jackson v. Virginia standard. Compare the similar circumstances of State v. Aitch, 465 So.2d 27 (La.App. 1st Cir.1984).
We find no errors patent in this record.
FREEMAN’S SENTENCE
Freeman was sentenced to concurrent sentences at hard labor for the maximum three years on the unauthorized use charge and for 10 years on the burglary charge. He was 20V2 years old when the offenses were committed. He has a juvenile criminal record. His adult criminal record dates from 1983. He had been placed on two years supervised probation about two months before the Palais Royal burglary after being charged with felony theft and pleading guilty to the reduced charge of misdemeanor theft.
CAPERS’ SENTENCE
Capers was slightly over 21 years old when the offenses were committed. His criminal record as a juvenile includes crimes against the person and dates back to 1978. As an adult his record dates back to 1983. He is a second felony offender, *1283 having been convicted of burglary in 1983 and having served hard labor time for probation violation. For the crime of unauthorized use, he was sentenced to three years at hard labor.
Capers admitted being a second felony offender. Consequently, his sentence was enhanced and he was ordered to serve 15 years at hard labor for the burglary, concurrent with the maximum three-year hard labor sentence for the unauthorized use.
Capers complains that the trial court placed undue emphasis on his criminal record and degraded him by referring to him in such terms as “incorrigible.” To justify a maximum sentence, however, a trial court is required to articulate or demonstrate that a defendant is the “worst type offender.” State v. McGhee, 469 So.2d 1051 (La.App. 2d Cir.1985). The trial court accomplished this.
CONCLUSION
The sentences were individualized to each defendant and were well-articulated in compliance with CCrP Art. 894.1 factors, mitigating and aggravating.[1] The sentences are not grossly out of proportion to the crimes charged and do not needlessly inflict suffering upon defendants.
The convictions and sentences of each defendant are AFFIRMED.

. We do not condemn, but adopt, the trial court’s excellent sentencing reasons as an unpublished appendix.