513 So.2d 449 (1987)
STATE of Louisiana, Appellee,
v.
Earnest F. PATRICK, Jr., Appellant.
No. 18,913-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
Rehearing Denied October 22, 1987.
*450 Richard E. Hiller, Indigent Defender Office, Shreveport, for appellant.
William J. Guste, Atty. Gen., Baton Rouge, Paul J. Carmouch, Dist. Atty., Scott J. Crichton, and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
This 39-year-old father appeals his conviction by jury of two counts of incest and his consecutive sentences totalling 30 years at hard labor (the maximum 15 years for each crime). LRS 14:78.
In five assignments, defendant questions the procurement or admissibility of evidence, the sufficiency of the evidence to convict, and the excessiveness of the sentences. The one assignment not briefed or argued is not considered. State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied. Defendant argued below and contends here that the testimony of his 17-year-old daughter, the alleged victim, about the incestuous relationship and a child allegedly born of the relationship, is not sufficient to convict because it was the product of coercion by State DHHR employees and others who threatened to legally sever the victim's parental right to the child.
We find no error and affirm.

FACTS
Defendant's oldest daughter, Kimberly, born December 12, 1968, was the victim. Defendant was indicted for acts of incest between January 10 and February 20, 1984, in count one, and for an act of incest on March 15, 1984, in count two. Kimberly's child was born October 13, 1984.
Defendant lived with his wife and three daughters, Kimberly, born 1968; Diane, born 1971; and Tammy, born 1976. Kimberly testified that her father began sexually abusing her when she was about 12 years old, sometimes before her grandmother died in 1980 or 1981. Shortly thereafter defendant moved Kimberly into his bedroom upstairs, relegating his wife and other daughters to downstairs sleeping quarters. Defendant and Kimberly slept in the same bed.
After defendant moved Kimberly into his bedroom and before 1984, DHHR social workers began investigating matters other than incest in defendant's home. During the course of one of the investigations defendant enclosed a balcony adjoining the upstairs bedroom to satisfy DHHR's inquiry about the family's sleeping arrangements.
*451 Following a more thorough investigation prompted by the mother's assertion that defendant was having intercourse with Kimberly, DHHR obtained an order of the Juvenile Court on March 16, 1984, and removed defendant's three children from his home to more protected and custodial care. Kimberly then learned that she was pregnant with the child that she delivered on October 13, 1984.
Until August 1985, Kimberly denied a sexual relationship with her father. She initially told authorities before and after her child was born that JB, a family friend, was the father of her child. She also initially stated that she had been active sexually with another family friend, CW. CW died about the time Kimberly and the other children were removed from defendant's home. JB testified at the trial.
In late October 1984, Kimberly was allowed to leave the Family Crisis Center to visit her newborn infant who was in the care of others in Shreveport. She fled to Texas with her father and child where they lived together until DHHR found them in July 1985 and returned Kimberly and her child to Louisiana. She thereafter retracted her previous statements about having been sexually involved with CW and JB. She then stated and later testified at trial that the incestuous relationship with her father began when she was about 12 years old and that he was the father of her child. She testified that she and her father had intercourse almost every night before DHHR removed her from the home in March 1984. She denied having sexual intercourse with others.
Defendant's second daughter, Diane, testified that no one in defendant's household was allowed to go into the upstairs bedroom area after defendant and Kimberly went to bed at night. Defendant installed a barrier to prevent ready access to the upstairs bedroom. Defendant's third daughter, Tammy, testified that she entered the upstairs bedroom on one occasion after her mother broke the barrier and found her sister, Kimberly, nude in the bed with defendant. Kimberly testified she and the defendant were both nude when Tammy found them.
Defendant's wife, diagnosed as a chronic paranoid schizophrenic, was confined in Central Louisiana State Hospital before and during the trial and did not testify.
DHHR witnesses testified that defendant admitted "sleeping" in the same room with Kimberly.
A serologist opined that neither defendant nor JB could be serologically excluded as the father of Kimberly's child. JB denied having sexual intercourse with Kimberly. He further testified that defendant had given him a used car in an attempt to get JB to say that he was the father of Kimberly's child. JB testified that he did not state to anyone that he was the father of the child.
Kimberly said that after March 16, 1984, defendant told her that JB would say the child was his and for her to tell the same story. Kimberly said that defendant also told her to fabricate a story that her mother had threatened her life and chased her with scissors just before she moved upstairs with defendant.
Kimberly testified that she and defendant regularly engaged in sexual intercourse when they lived in Texas between November 1984 and July 1985.
A pediatrics professor testified that Kimberly's child exhibited recessive genes consistent with an incestuous procreation by parents who are in a "close relationship," and also consistent with the mother's use of drugs while pregnant or with fertilization by a father with similar recessive genes. Defendant's psychological expert who tested Kimberly acknowledged that she exhibited many of the 20 behavioral characteristics that indicated she was a victim of incest.
Other evidence before the jury will be discussed in the assignments of error which follow.

ASSIGNMENT ONE
Samplings of the blood of defendant and others were taken by court orders signed in March 1986, under the authority *452 of the Uniform Act on Blood Tests to Determine Paternity, LRS 9:396, 9:398. Defendant did not seek to suppress opinion evidence based on serological and other examinations of that blood and made no objection at trial to the admissibility of the results of the examinations. Defendant contends here that the State obtained his blood sample without a search warrant, but does not here, and did not below, question the constitutionality of the statutes which authorized the taking and testing of the blood of a defendant. Defendant does not contend that the State did not comply with the procedures of the Uniform Act on Blood Tests when the order for the taking of the blood was obtained.
Under these circumstances, defendant cannot complain on appeal that his blood was seized by an unconstitutional search. CCrP Art. 841; State v. Anderson, 315 So.2d 266, 268 (La.1975). Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), does not control in these circumstances and is factually inapposite. Compare State v. Spence, 418 So.2d 583 (La.1982).

ASSIGNMENT TWO
Kimberly's appointed attorney was allowed, over defendant's objection as to relevancy, to testify that Kimberly's decision to surrender her child for adoption was knowingly, freely, and voluntarily done.
The attorney's testimony was relevant to corroborate Kimberly's testimony and to rebut the defendant's repeated contention, made in his opening statement and throughout the trial and in his cross-examination of Kimberly, that her testimony was coerced. See our discussion of admissibility of evidence under LRS 15:435, 15:441 in State v. Brown, 467 So.2d 1151, 1156 (La.App. 2d Cir.1985), writ denied. See also State v. Stramiello, 392 So.2d 425, 428 (La.1980).

ASSIGNMENT THREE
The State's psychological expert, who tested and treated Kimberly, was allowed to opine, over defendant's objection that the witness would be invading the province of the jury as to the ultimate issue of guilt, that Kimberly exhibited many behavior patterns consistent with her being the victim of parental sexual abuse.
After defendant made the objection, the trial court cautioned the State's expert to be "very circumspect" about stating as a fact whether or not Kimberly had been sexually abused by the defendant. The expert's opinion that Kimberly's behavior, including her initial denial of sexual relations with her father, was consistent with factors which indicate parental sexual abuse was admissible and did not invade the province of the jury. The defendant's expert later agreed with this conclusion before the jury. Defendant's contention throughout the trial and his cross-examination of Kimberly struck at the change in her story about who was the father of the child to support his argument that Kimberly's testimony was coerced by the threat of DHHR employees to take her baby away from her.
Psychologists explained that a child-victim of parental incest exhibits abnormal behavior traits and suffers great psychological harm. The testimony of the child is usually necessary to convict a father of the heinous crime of incest. Expert psychological testimony aids and enlightens the jury in this area of behavioral traits, an area which is beyond the understanding of the average lay person, and assists the jury in its search for truth. See State v. Birdsong, 452 So.2d 1236 (La.App. 2d Cir.1984) writ denied, discussed in Pugh and McClelland, Evidence, 46 La.L.R. 463 at 466 (1986). See State v. Wheeler, 416 So.2d 78, 80 (La.1982).
Psychological expert testimony is admissible here because it assisted the jury's understanding of the behavior of a child who may have been the victim of parental incest, an area requiring "specialized knowledge." The facts of this case are inapposite to cases where the admissibility of expert testimony in an area of "common knowledge," such as eye-witness identification, is at issue. See State v. *453 Stucke, 419 So.2d 939, 944 (La.1982), and concurrence by Lemmon, J., at 951.

ASSIGNMENT FOUR
Defendant asserts that the evidence in this case fails to meet the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also LRS 15:438. We disagree.
The elements of the crime of incest are "intercourse coupled with knowledge of the relationship." State v. Forman, 466 So.2d 747, 748 (La.App. 4th Cir.1985); LRS 14:78. Defendant does not argue that the paternal relationship, and the circumstances of his living with his family, were not proved beyond a reasonable doubt. He argues that the State did not prove beyond a reasonable doubt that he had sexual intercourse with Kimberly.
We view the evidence in the light that most favorably supports the jury verdict. The jury obviously believed the State's witnesses whose testimony we have above summarized. Defendant's conviction does not rest solely on Kimberly's testimony or solely on circumstantial evidence.
JB corroborated Kimberly's testimony that she had not had intercourse with JB. Legally, whether she had or did not have intercourse with JB is immaterial to defendant's conduct. Her sister Tammy corroborated Kimberly's testimony that she had been naked in the bed of her father. Others corroborated her testimony that she routinely "slept" with her father when she was 12 to 15 years old. She obviously became pregnant before she was removed from her father's house in March 1984. Defendant relegated his family to the downstairs area of his home and erected a barrier to the upstairs area which he admitted to others he shared with Kimberly.
Expert witnesses said Kimberly exhibited behavioral characteristics and the child exhibited genetic characteristics that were consistent with defendant's having had intercourse with Kimberly at the time Kimberly's child was conceived in 1984.
JB asserted that defendant attempted to suborn him into admitting he fathered the child. Kimberly asserted defendant attempted to suborn her to fabricate a story about why she was moved into defendant's bedroom. Her lawyer's testimony that Kimberly's surrender of the child for adoption was voluntary indirectly discredits defendant's assertion that Kimberly's testimony against him was coerced.
Even if the evidence supporting the jury verdict was entirely circumstantial as defendant contends, the evidence would not be legally insufficient to convict. Circumstantial evidence is not inherently less reliable than direct evidence. The jury could have concluded that defendant's denial of intercourse was incredible and that his hypothesis that another fathered Kimberly's child was remote, inconsistent, and unreasonable when compared with the totality of the evidence that supported the reasonable and beyond doubt hypothesis of the State that defendant fathered the child. See State v. Freeman, 506 So.2d 1279, 1281-2 (La.App. 2d Cir.1987), and cases cited therein.

ASSIGNMENT FIVE
We agree that maximum sentences are to be reserved for the most egregious and blameworthy of offenders. State v. Tatum, 471 So.2d 887, 888 (La.App. 2d Cir.1985). We also acknowledge that consecutive sentences for crimes arising out of a single course of conduct should not be imposed absent an unusual risk to the safety of the public. State v. Sherer, 437 So.2d 276 (La.1983).
The facts of this case and defendant's conduct and history justify the sentences which we find are neither grossly out of proportion to the crime nor needless impositions of pain and suffering. State v. Stucke, supra, at 947; State v. Bonanno, 384 So.2d 355 (La.1980).
Defendant is a fourth felony offender. He had a juvenile record. He was convicted of attempted manslaughter and of simple burglary in 1967. Defendant was also convicted of attempted simple burglary in 1973. Defendant has been arrested more than a dozen times including arrests for "1st degree rape" in the Virgin Islands and for "enticing a child" in Texas.
*454 Tammy, the defendant's youngest child, accuses her father of having sexual intercourse with her when she was seven years old, and of injecting her with a drug. Kimberly accuses defendant of engaging in a sexual relationship with Diane. Diane accuses defendant of supplying her with marijuana since she was age 7.
The defendant has caused irreparable harm to his family and to society. His three daughters are in state custody. His wife is confined to an institution with a chronic mental condition. The trial court observed that defendant has fathered a child that will be "a lasting reminder of the problems of incest and in-breeding that the legislature has deemed unlawful."
The trial court observed that any lesser sentence than the maximum allowed by law would deprecate the seriousness of the crimes. We agree.
The maximum sentences are justified and supported and are not excessive.

CONCLUSION
The convictions and sentences are AFFIRMED.

ON APPLICATION FOR REHEARING
Before LINDSAY, MARVIN, HALL, FRED W. JONES and SEXTON, JJ.
Rehearing Denied.