760 So.2d 540 (2000)
STATE of Louisiana
v.
Douglas KING.
No. 99-KA-1279.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
*541 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant D.A., Gregory Kennedy, Assistant D.A., David Wolff, Assistant D.A., for Plaintiff-Appellee.
Richard T. Simmons, Jr., Caroline D. Ibos, Metairie, LA, for Defendant-Appellant.
Panel composed of Judges CHARLES GRISBAUM, Jr., EDWARD A. DUFRESNE, Jr. and JAMES L. CANNELLA.
DUFRESNE, Judge.
The defendant, Douglas King, challenges his conviction and sentence for attempted simple rape. For the reasons set forth herein, we reverse the defendant's conviction and sentence and remand the matter for a new trial.
The Jefferson Parish District Attorney indicted the defendant for attempted aggravated rape, a violation of LSA-R.S. 14:27:42. The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty of the responsive verdict of attempted simple rape, a violation of LSA-R.S. 14:27:43. As a result of this conviction, the court sentenced the defendant to three years imprisonment, to be served without benefit of probation, parole, or suspension of sentence. The defendant filed a motion to reconsider sentence which was denied by the trial court. The defendant now appeals.

FACTS
Trial testimony revealed several versions of the same events. The defendant was convicted of the attempted simple rape of M.S. At the time of the incident the defendant was a seventeen year old high school student, and M.S. was a fourteen year old student.
On the evening of the incident, both M.S. and the defendant had attended a party in the Hillcrest area of Jefferson Parish. Prior to the party, at approximately 9:00 p.m., M.S. bought a large "190" daiquiri with an extra shot of alcohol which she consumed at the Hillcrest party. The police broke up the Hillcrest party at approximately 10:30 p.m., and the teens then continued the party held at the Crown Point boat launch. At the end of the Crown Point party, M.S. realized that the person with whom she had come to the party was drunk, so M.S. asked the defendant for a ride home. M.S. got into the car with the defendant, the defendant's cousin, J.K., and two other friends, C.C. and D.P.
On the way to M.S.'s home, the defendant told M.S. that he was going to drop the girls, M.S. and her best friend, C.C., at M.S.'s home. The defendant, J.K., and D.P. testified that he told the girls he was dropping them off so that he could go and *542 "get a piece of ass." According to testimony, M.S. told the defendant that he did not need to take them home because he could "get all the ass you want right here." M.S. denied making this statement. The defendant pulled the car over behind a building and M.S., the defendant, and J.K. exited the car. The defendant, state's witness J.K., and D.P. remembered the defendant pulling the car over, and the following events taking place at the invitation of M.S. However, M.S. testified that the defendant "got her out of the car." The defendant and M.S. kissed each other on the hood of the car, but soon moved from the hood because M.S. complained that it was too hot. M.S. was then boosted onto the trunk of the car where she removed her jeans and underwear with the help of the boys. Both the defendant and J.K. kissed M.S., but according to their testimony did nothing else, as they were unable to become aroused. M.S. told the boys to stop, put her clothes back on, and got back into the car. M.S. directed the defendant back to her home, at which point she and C.C. got out of the car and walked into the house. M.S. did not report the incident, however, the police were called by the parents of her friend, C.C.
M.S. testified that she did not remember the events of the evening clearly, but that she did not consent to the activity. The defendant, J.K., and D.P. testified that everything that happened that evening was consensual on the part of M.S.

RIGHT TO PRESENT A DEFENSE
On appeal, the defendant raises seven assignments of error. In his second assigned error, he complains that he was denied his fundamental right to present a defense because the trial court excluded expert testimony from the defense toxicologist. For the reasons which follow, we find that the trial judge committed reversible error in excluding this testimony.[1]
The defendant was convicted of attempted simple rape, a violation of LSA-R.S. 14:27:43. Simple rape, a violation of LSA-R.S. 14:43, is defined, in pertinent part, as follows:
A. Simple rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause, other than the administration of the offender, and without the knowledge of the victim, of any narcotic or anesthetic agent or other controlled dangerous substance and the offender knew or should have know of the victim's incapacity.
In this case, in order to convict the defendant, the state had the burden of proving that M.S. was non-consenting because she was in a "stupor" or abnormal condition of mind produced by alcohol.[2] To that end, the state presented the testimony of Dr. Charles Krone, who testified that the alcoholic beverage consumed by M.S. the night of the incident contained approximately 8% alcohol. The defense, in an attempt to show that the amount of alcohol consumed by M.S. would not have placed her in a "stupor" began to elicit the testimony of Dr. George, an expert in the fields of pharmacology and toxicology. However, the trial court prevented Dr. George from testifying as to the effects of intoxication relative to the amount of alcohol consumed. The defendant then proffered the doctor's testimony for appeal.
*543 The purpose of an expert witness, particularly in criminal cases, is to provide the jurors with a basis of knowledge and background information on a subject. The jury's role is that of ultimate fact finder: the jurors relate background knowledge from the expert to the facts established by evidence at trial and make a determination of the defendant's guilt. LSA-C.E. art. 702; State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-75 (La. 4/4/94) 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055.
LSA-C.E. art. 704 states:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Comment (c) to LSA-C.E. art. 704 states:
Under this Article the fact that an opinion or inference embraces an ultimate issue in a case does not preclude admissibility. The law continues, however, to prefer the more concrete to the less concrete, and as the subject matter of an opinion approaches an ultimate issue the presentation of the more concrete becomes more helpful, and conclusory testimony generally less so. This Article is thus in harmony with the views expressed by the Louisiana Supreme Court in State v. Wheeler, 416 So.2d 78 (La.1982), discussed in Pugh & McClelland, "Developments in the Law, 1982-1983, Evidence," 44 La.L.Rev. 344 (1983) which should continue to control.
When an expert testifies, the reluctance to admit opinion testimony is relaxed. State v. Wheeler, 416 So.2d 78 (La. 1982). However, courts will exclude "extreme expressions," even by experts, on matters such as how the case should be decided or whether the defendant is guilty. LSA-C.E. art. 704. Various factors weigh heavily against the admission of this type of testimony including, 1) the evidence is not truly expert testimony because it relates to a matter well within the jury's understanding and does not aid the jury in reaching a decision; 2) the opinion is abstract and indirect; and 3) it relates to an ultimate issue instead of a collateral matter. State v. Wheeler, supra.
Applying these factors in the instant case, Dr. George's statement was not an opinion on how the case should be resolved or whether the defendant was guilty. Dr. George's expert medical testimony would have aided and enlightened the jury in the area of specific effects of intoxication, an area beyond the understanding of the average lay person, and assisted the jury in its search for the truth. State v. Patrick, 513 So.2d 449 (La.App. 2 Cir.1987), writ denied, 519 So.2d 140 (La.1988). Although the jury was told that the beverage consumed by M.S. contained 8% alcohol, the effects of the consumption of that amount of alcohol would not be within the purview of the average person. Dr. George, in the proffered testimony, offered specific and detailed testimony as to the amount of alcohol required to place a person in a stuporous condition. He also provided testimony as to the reactions of a person in that condition. Without the assistance of this testimony, it would have been very difficult for a jury to properly evaluate the victim's condition. Further, Dr. George did not offer an opinion as to the ultimate issue in the case, the guilt or innocence of the defendant. As such, Dr. George's expert testimony was properly admissible at trial.
The defense in this case was based on showing that M.S. was in a condition to consent to the activities of the defendant. Because the defense was not allowed to present Dr. George's testimony, they were unable to expose to the jury various weaknesses and inaccuracies found in M. S.'s testimony. Dr. George's testimony seems all the more relevant because of the absence in the record of any testimony, aside *544 from M. S.'s, to describe her as being in a "stupor." Absent the trial court's allowance of Dr. George's testimony detailing for the jury the effects of alcohol consumption, and the meaning of the 8% figure, the defendant's right to present a defense was severely curtailed. Because the defense theory, if properly presented, may well have been sufficient to plant reasonable doubt in the jury's mind, the exclusion of this evidence was not harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198. We find that the exclusion of this testimony denied the defendant the right to a fair trial. State v. Hamilton, 441 So.2d 1192 (La.1983); State v. Calloway, 97-796 (La. App. 5 Cir. 8/25/98), 718 So.2d 559, writs denied, 98-2435, 98-2438 (La.1/8/99), 734 So.2d 1229. Therefore, we find that the trial court committed reversible error in not allowing the defendant to present the testimony of Dr. George.
For the foregoing reasons, we reverse the defendant's conviction and remand the case for a new trial. Because the defendant was previously convicted of attempted simple rape, he may not be retried for any greater offense. See State v. Van Winkle, supra.
REVERSED AND REMANDED
CANNELLA, J., CONCURS WITH REASONS.
CANNELA, J., concurring with reasons.
I concur with the disposition of this case. However, I note two other errors that could have resulted in a new trial, in the event that the State chooses to prosecute Defendant following this remand.
First, Defendant claimed that he was denied his Sixth Amendment right to confront the complainant with a doctor's impeaching testimony. Because the doctor/patient privilege does not supercede the right to a fair trial, this evidence may have directly affected Defendant's right to present a defense. Therefore, this evidence should have been received.
Second, the jury instructions defining "stupor" were incomplete. This error could have adversely affected the verdict. The jury was confused about the definition, as evidenced by their requested clarification of the meaning of the word, after the deliberations commenced. Therefore, the complete definition of "stupor" should have been used in the jury charges.
NOTES
[1] Since we find merit to the defendant's second alleged error, we pretermit consideration of the remaining assignments of error.
[2] For a discussion of burden of proof see, State v. Porter, 93-1106 (La.7/5/94), 639 So.2d 1137; State v. Reed, 324 So.2d 373 (La.1975).