926 So.2d 665 (2006)
STATE of Louisiana
v.
Casey WILLIAMS.
No. 05-KA-673.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
*667 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Gevin P. Grisbaum, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Martin E. Regan, Jr., Karla M. Baker, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Defendant, Casey Williams, appeals his conviction and sentence on a charge of simple rape in violation of La. R.S. 14:43. For reasons that follow, we affirm.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Casey Williams, with forcible rape, a violation of La. R.S. 14:42.1. The defendant pled not guilty at arraignment. The defendant subsequently filed various pre-trial motions, none of which are at issue on appeal.[1] On November 30, 2004, the defendant proceeded to trial before a twelve-person jury, which found him guilty *668 of the responsive verdict of simple rape, a violation of La. R.S. 14:43.
On April 18, 2005, the trial judge sentenced the defendant to 15 years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. This timely appeal follows.

FACTS
At trial, B.V. testified that she was 23-years-old.[2] In November of 2003, B.V., a resident of Memphis, was staying with friends who lived on Hennessey Street, not far from the French Quarter. On the evening of November 8, 2003, B.V. went to Checkpoint Charlie's, a bar in the French Quarter to listen to a band at the bar. She drank nine or ten beers while listening to music and left when the band finished playing, between 4:00 and 5:00 a.m. She left the bar to locate a bus stop to return to Hennessey Street.
While B.V. was looking for the bus stop, a man, later identified as the defendant, pulled alongside her in a red truck. He struck up a conversation with her. B.V. offered to pay the defendant to bring her home. The defendant accepted the money and began driving. They engaged in small talk, and the defendant stopped at a store. Thereafter, the defendant resumed driving. It was not until they reached the interstate that B.V. realized that something was amiss. B.V. told the defendant that he was going the wrong way, but the defendant replied that he knew where he was going. The defendant proceeded on the interstate, heading toward the Mississippi River.
When B.V. again questioned the defendant about their direction, the defendant replied that he would let her out or take her where she wanted if she agreed to perform oral sex on him. B.V. refused, but the defendant told her that she had to do what he said or else she wasn't getting out of the truck. They ultimately reached the Westbank, where they passed a tall, round hotel. The defendant kept driving on the elevated Expressway. Eventually they reached the ground level of the road, but the defendant continued driving. B.V. didn't remember the defendant stopping at any traffic lights on the ground level. The defendant crossed the Huey P. Long Bridge and kept driving on to Jefferson Highway.
At some point, the defendant slowed the vehicle. B.V. attempted to get out of the truck, but the defendant grabbed B.V.'s left arm, preventing her from escaping. The defendant unfastened his pants and put a condom on his erect penis. He stopped the vehicle in the parking lot of a warehouse. He then shoved B.V. against the passenger's side door and pulled her pants to her ankles.[3] He pushed her legs over her shoulders, held her arms and legs and put his penis inside her vagina. B.V. struggled to get away and sustained a swollen lip in the struggle. B.V. was crying and told the defendant "no." When the defendant did stop, he removed the condom, which he threw out of the window while driving. The defendant made a Uturn heading back towards the Huey P. Long Bridge. As the truck slowed, B.V. opened the door and jumped out of the truck. She went to the median to try to flag down a car.
Between 7:30 a.m. and 8:00 a.m., Sylvia Roberts was on her way to work at Oasis Horticultural on Jefferson Highway. She saw B.V. sitting in the median. B.V. was crying and Ms. Roberts stopped to see if she needed help. B.V. told Ms. Roberts that she did need help because she had *669 just been raped behind nearby warehouses. Ms. Roberts asked B.V. to meet her across the street. While B.V. was crossing the street, a red truck stopped. According to B.V., the defendant begged her to get back in the truck. B.V. told him to get away from her. Ms. Roberts observed the confrontation, and said that B.V. began screaming "This is him. This is him." The red truck then drove away. B.V. ran towards Ms. Roberts, who dialed 911. B.V. kept repeating the license plate numbers to Ms. Roberts.
After the police arrived, Ms. Roberts observed the red truck traveling east on Jefferson Highway. Ms. Roberts alerted the police to the truck. Deputy Christy Clement of the Jefferson Parish Sheriff's Office saw the witness signaling to her. Deputy Clement pursued the truck, which was about 10 car lengths in front of her unit. Deputy Clement activated the unit's lights and sirens and commanded the driver, later identified as the defendant, to pull over. The defendant did not comply and continued driving for approximately one-half mile. Ultimately, the defendant stopped at a gas station at Eagle Street and Claiborne. Deputy Clement ordered the defendant out of the vehicle, read him his rights, and advised him that he was under investigation for rape. Although the defendant initially remained silent, the defendant later told the police that B.V. was in his truck, but denied that he had sex with her. Deputy Clement returned to Jefferson Highway to interview the victim. After the victim told Deputy Clement what had transpired, Deputy Clement brought her to the location where the defendant was stopped, and she immediately identified the defendant and the truck. Thereafter, Deputy Clement took B.V. to Lakeside Hospital, where she was examined by Dr. Kathryn Wild, an expert in obstetrics and gynecology. On the victim's left arm, Dr. Wild found bruises, which she believed were recently sustained. She also noted that the victim's upper lip was swollen and that there was an abrasion on the underside of the victim's upper lip.[4] Dr. Wild found no trauma to the victim's vagina, and she noted that the victim's genital area was clean-shaven. Dr. Wild found a pubic hair inside of the victim's vagina. Dr. Wild opined that the hair had been inside the victim for less than 24 hours.
The record indicated that the hair was lost and that it was not submitted for testing. Sharon Lawrence, the supervising nurse in charge of recovered evidence in the rape examination, testified that her usual procedure would have been to place the hair in a box, which would have been turned over to the police. Ms. Lawrence acknowledged that the hair was not listed as having been placed in the box. Ms. Lawrence said she did not know what happened to the hair.
An examination of the defendant's truck, which had a manual transmission, yielded a barrette that B.V. identified as the one that fell out of her hair in the struggle with the defendant. While doing a trace lift in the truck, in which an adhesive substance is applied to fabric, the police found an eyelash and a pubic hair. DNA testing revealed that the eyelash did not match the victim and the hair was not submitted for testing.[5] The police searched a four-block area of Jefferson *670 Highway for the condom that B.V. said the defendant had discarded, but did not find it.
At trial, B.V. acknowledged that she and others were arrested for public intoxication and interfering with a police investigation on November 3, 2003 and that she pled guilty as charged. She also acknowledged that she pled guilty to DWI in September of 2004.
The defendant rested without putting on any evidence or calling any witnesses.

LAW
In his first assignment of error, defendant contends that the evidence was insufficient to support his simple rape conviction because B.V.s' testimony was not credible, and because there was no evidence that B.V. was incapable of resisting due to intoxication.[6] The State contends that this Court need not determine whether the evidence was sufficient to support the verdict of simple rape because the evidence supported the charged offense of forcible rape.
When a defendant does not object to a legislatively responsive verdict, the defendant's conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1017. Accord, State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 766, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.
In the present case, the record contains no objection from the defendant to the trial judge's jury charges, which included simple rape as a responsive verdict. Because the defendant failed to timely object to a legislatively responsive verdict, the defendant is entitled to a reversal of his conviction only if the evidence is insufficient to support a conviction of the charged offense, forcible rape. See, State v. Wilkinson, supra.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, *671 99-2057 (La.1/14/00), 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
Forcible rape is defined in La. R.S. 14:42.1 in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
. . .
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and writ denied, 00-0150 (La.6/30/00), 765 So.2d 1066. See, State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789, where this Court held that the victim's testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape.
In support of his argument that B.V.'s testimony was not credible, the defendant urges that it would have been impossible for him to put on a condom while driving the truck, which had a standard transmission. He also contends that it was impossible for him to keep her from escaping the small truck. B.V. testified that after 30 minutes of the defendant driving, she became apprehensive. She acknowledged that the defendant was not restraining her the entire time, but she said that her door was locked. She said that she was able to unlock the door at some point, but could not recall whether she opened the door or not. Nevertheless, she maintained that she tried to unlock the door to get out of the truck numerous times. When the defendant slowed the truck and put on the condom, she attempted to get out of the door, but the defendant grabbed her arm. Thereafter, he forced her against the door and raped her while holding her legs over her shoulders.
Although there was no direct physical evidence, such as DNA or seminal fluid, to prove the defendant had sexual contact with B.V., expert serologist Christine Kogos testified that there could be sexual activity without sperm or seminal fluid when a condom is used. Further, Dr. Wild explained that the absence of sperm, seminal fluid or evidence of forcible penetration is not indicative of whether or not a victim has been sexually assaulted.
Moreover, there was physical evidence to support the victim's account of the events. Dr. Wild noted that B.V.'s lip was swollen and that there were fresh bruises on B.V.'s left arm. Photographs of her injuries were introduced into evidence. In addition, the barrette that B.V. said she lost during the struggle with the defendant was found on the passenger's seat of the defendant's truck.
*672 While the defendant attacks B.V.'s credibility, the record reflects that B.V.'s account of the events was unwavering. Further, Deputy Clement testified that B.V.'s report of the rape was consistent with what B.V. told Dr. Wild. Deputy Clement also observed that B.V. was hysterical and crying, which is expected in a rape victim. B.V. immediately identified the defendant as her attacker shortly after the assault and again at trial.
A careful review of the record reveals that, viewed in the light most favorable to the prosecution, the evidence was sufficient for rational jurors to conclude that the State proved the essential elements of the charged offense, forcible rape, beyond a reasonable doubt. Hence, the jury did not err in returning the responsive verdict of simple rape.
In his second assignment of error defendant contends that the trial judge erred in failing to declare a mistrial because the prosecutor made two prejudicial comments during voir dire on the defendant's choice not to testify. First, the defendant points to the prosecutor's statement that, "it would take fifteen thousand pounds of chains to keep me off the stand if I was accused of a crime." The defendant also challenges the prosecutor's remark that, "wild horses couldn't keep me off the stand, nothing can prevent me from getting up there and claiming my innocence; you know I would crawl over the table to get to the stand when presented with the opportunity." The defendant concedes that his trial counsel failed to object to these remarks, but contends that the failure to object resulted in ineffective assistance of counsel, which he raises in Assignment Four. The State responds that the defendant is precluded from raising his claim on appeal due to the lack of an objection. The State asserts that, in any event, the prosecutor's remarks were merely directed at exploring the prospective jurors' views on a defendant who invokes his right to remain silent, and were not improper comments on the defendant's right to remain silent.
The remarks singled out by the defendant were made immediately after the prosecutor's explanation of the presumption of innocence and during the prosecutor's discussion of a defendant's right not to testify. The prosecutor began his comments by telling the jury that the defendant did not have to testify and that the jury could not hold it against him. The prosecutor then asked the following question, which contained the first set of the comments the defendant challenges:
Just by a show of hands, would any of y'all say it would take fifteen thousand pounds of chains to keep me off the stand if I was accused of a crime? Any of you all?
The record reflects that affirmative indications were given.
The next comment occurred when the prosecutor was interviewing one of the jurors who equivocated when asked if she could accept the concept of a defendant's asserting his right not to testify:
THE STATE:
Okay. Well, let's talk about it. What (sic) you're unsure about?
JUROR:
If I was innocent I would be so righteously angry that I was accused.
THE STATE:
Okay. And that's alright. But you understand what the law is. The law is that you can't hold it against them.
JUROR:
Yeah, I know.
THE STATE:
Alright. Even though you feel that way and you say wild horses couldn't *673 keep me off the stand, nothing can prevent me from getting up there and claiming my innocence; you know, I would crawl over the table to get to the stand when presented with the opportunity. That's you.
JUROR:
Uh huh. (Affirmative response).
The defendant did not object to these comments or move for a mistrial.
La.C.Cr.P. art. 770(3) provides that, upon the defendant's motion, a mistrial shall be ordered when the prosecutor makes a remark or comment during the trial or in argument, within the hearing of the jury, that refers directly or indirectly to the failure of the defendant to testify in his own defense. See, State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698, 701. During voir dire, the State may mention the defendant's constitutional privilege against self-incrimination to the jurors, and then inquire into the weight jurors will give to the defendant's testimony if he decides to testify. State v. Shea, 421 So.2d 200, 206 (La.1982), rev'd on other grounds, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
In this case, the defendant neither objected nor moved for a mistrial based on the prosecutor's remarks. In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La.C.Cr.P. art. 841. See, State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict, then resorting to appeal on errors that might easily have been corrected by an objection. State v. Johnson, supra. In State v. Wesley, 33,402 (La.App. 2 Cir. 5/10/00), 759 So.2d 286, writ denied, 00-1702 (La.4/12/01), 788 So.2d 1201, the court held that because the defendant failed to object or move for a mistrial based on an alleged prosecutorial comment on the defendant's failure to testify, the defendant was precluded from raising that issue for the first time on appeal. In the instant case, we find that the defendant is likewise precluded from raising this issue for the first time on appeal, considering that the defendant failed to object or move for a mistrial.
In his third assignment of error, the defendant contends that his sentence is excessive because the trial judge did not adequately consider the guidelines in La. C.Cr.P. art. 894.1. The defendant further contends that the trial judge imposed an excessive sentence "because the trial judge was mad at defense counsel, Martin Regan, who was hired on the case prior to sentencing."[7] The State responds that the defendant is limited to a constitutional review of his sentence because he did not file a motion to reconsider sentence and the record supports the sentence imposed.
In this case, defendant did not make or file a motion to reconsider the sentence on specific grounds. Rather, he merely noted his objection to the sentence. Nevertheless, this Court has recognized that the failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for *674 constitutional excessiveness only. State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence. State v. Allen, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879.
In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen, 868 So.2d at 880. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence. State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192.
Simple rape is punishable by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years. La. R.S. 14:43(B). The trial judge sentenced the defendant as follows:
THE COURT:
. . .
The Court has read the PSI that was prepared. The Court sat through the trial and heard the evidence that was presented.
And in light of that and the guidelines in connection with 894.1, the Court hereby sentences you to serve 15 years in the Department of Corrections at hard labor. That sentence will be without benefit of probation, parole, or suspension of sentence, and you'll be given credit for time served.
The presentence investigation report (PSI) reflects that the defendant was 24-years-old at the time of the commission of the offense. While the PSI reflects this is the defendant's first felony conviction, the defendant has a 2003 Texas misdemeanor conviction for "Assault Causes Bodily Harm." The defendant's 15-year sentence is in the mid-range of the possible 25-year sentencing exposure. In State v. Wilkinson, supra, this Court held that the defendant's 20-year sentence for simple rape was not excessive, despite the defendant's argument that the trial judge failed to consider his lack of prior felonies. In that case, the defendant was charged with forcible rape and this Court found that the evidence supported a verdict of forcible rape.[8]Id., at 772 So.2d at 771.
The question presented when reviewing a defendant's sentence is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion." *675 State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133. Although the trial judge restricted benefits for the entire sentence, the trial judge imposed a mid-range sentence. Considering all of the circumstances in this case, including that the evidence supports a verdict of forcible rape, we find that the trial judge did not abuse her discretion by imposing the 15-year sentence for the simple rape conviction.
In defendant's fourth assignment of error, he argues he had ineffective assistance of counsel in several respects. The defendant contends that his trial attorneys 1) failed to subject the prosecution's case to meaningful adversarial testing; 2) failed to call any witnesses; 3) failed to urge the defendant to testify in his own defense; 4) failed to request to have the jury inspect the defendant's truck; 5) engaged in confusing behavior throughout trial; 6) failed to submit the rape kit for DNA testing; and 6) failed to object to the prosecutor's improper comments during voir dire on his right not to testify at trial.[9]
The State responds that the defendant's allegations are best addressed in an application for post-conviction relief, but that relief is not warranted in any event.
Generally, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Peart, 621 So.2d 780, 787 (La. 1993); State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La.C.Cr.P. arts. 924-930.8; State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1095, writ denied, 98-0673 (La.8/28/98), 723 So.2d 416.
We have reviewed the defendant's allegations of ineffective assistance of counsel made herein and find that there is sufficient evidence to consider some, but not all, of the allegations. Therefore, we find this assignment of error and its supporting allegations of ineffective assistance of counsel are best considered in their entirety by the trial court on post-conviction relief at an evidentiary hearing. Accordingly, we pretermit further discussion of this assignment of error in this direct appeal. See, State v. Taylor, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595.
Finally, the record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). It is noted that there is a discrepancy between the commitment and the transcript. The transcript indicates that the trial judge did not advise the defendant of the two-year prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. The commitment indicates that defendant was properly advised of this prescriptive period. Where there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). It is further noted that defendant was convicted of simple rape, which is defined as a sex offense by La. R.S. 15:541(14.1). La. R.S. 15:540, *676 et seq. require registration of sex offenders, and La. R.S. 15:543(A) requires the trial court to notify a defendant of the sex offender registration requirements of La. R.S. 15:542. The record does not reflect that the defendant was informed of the registration requirements as provided by La. R.S. 15:543(A).
Therefore, we remand the matter to the district court and order the district court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 and La. R.S. 15:543(A) by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. See, State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975; State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167.
Accordingly, we affirm the defendant's conviction and sentence and remand the case to the district court with the above instructions.
AFFIRMED AND REMANDED.
NOTES
[1] It is noted that the defendant filed several writ applications. This Court did not grant any of the writ applications. Two writs, 04-K-1106 and 04-K-1354, dealt with the defendant's speedy trial motions. Another writ, 04-K-1383, dealt with the trial judge's ruling on the defendant's motion to quash because of missing evidence, to wit, a hair allegedly recovered during the victim's rape exam. Finally, writ number 04-K-1384 dealt with the trial judge's denial of the defendant's motion in limine to exclude testimony regarding the discovery of the hair.
[2] The victim is identified by initials to protect her identity. See La. R.S. 46:1844(W)(3).
[3] B.V. testified that she was not wearing underpants.
[4] It is noted that B.V. said that she burned her lip when she was smoking a cigarette while on the phone with 911. It is unclear whether the abrasion Dr. Wild noted on the underside of B.V.'s lip was the cigarette burn.
[5] Detective David Spera explained that the hair was not submitted for testing because the victim's genital area did not have hair. As such, the hair could not have linked the victim to the defendant's truck.
[6] Simple rape is defined in pertinent part in La. R.S. 14:43:

A. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.
(2) When the victim is incapable, through unsoundness of mind, whether temporary or permanent, or understanding the nature of the act and the offender knew or should have known of the victim's incapacity.
. . .
[7] It is noted that the trial judge set a rule for contempt on Mr. Regan because he was late for court. Thomas Calogero was standing in for Mr. Regan until he arrived. Moreover, the defendant was represented at sentencing by the attorneys who represented him during trial because the trial judge did not allow the trial attorneys to withdraw.
[8] The facts of Wilkinson are slightly different from the instant case, considering that the victim in Wilkinson was a 14-year-old girl and B.V. was in her early twenties.
[9] The defendant references the same prosecutorial comments as in Assignment Two.