WALTER J. ROTHSCHILD, Judge.
 

 _jjOn November 2, 2003, the Jefferson Parish District Attorney’s Office filed a bill of information charging the defendant, Dave Starr, with simple rape, a violation of
 
 *453
 
 LSA-R.S. 14:43. At his arraignment, the defendant pled not guilty. On June 15, 2006, after a two-day trial, a six-person jury found the defendant guilty as charged. Subsequently, the defendant filed a post verdict judgment of acquittal, alleging that the evidence was insufficient to sustain his conviction, which the trial court denied. The trial court sentenced the defendant to 15 years at hard labor. On the same day, the State filed a multiple bill alleging the defendant to be a third felony offender, which the defendant denied.
 
 [1]
 
 After the multiple offender hearing, the trial judge sentenced the defendant to 16 years and eight months at hard labor. The defendant now appeals on the basis of sufficiency of the evidence.
 

 \ .FACTS
 

 The victim, A.EL,
 
 [2]
 
 testified that she met the defendant, whom she identified in court, over a year before the incident took place. The victim testified that, on the night of the incident, at approximately 9:00 p.m., she visited the defendant before attending a birthday party. The victim admitted to having had a couple of drinks at the party. However, she testified that she was not drunk. The victim visited the defendant again after the party.
 

 After the victim arrived at the defendant’s apartment, the victim told the defendant that she wanted a non-alcoholic drink. The defendant gave her a drink. The victim testified that she did not taste any alcohol in the orange drink. The victim testified that, after she drank it, everything got “really blurry.” The victim testified that she remembered saying that she felt sick, drowsy, tired, and that she wanted to lie down. She did not feel okay to drive or do anything. The defendant, as well as Brittany Marie Walker and Ricky Suer
 
 [3]
 
 , told her to go lie down in the only bedroom because they did not want her to drive.
 

 The victim testified that she had no recollection of events until she awoke. When she awoke:
 

 “[The defendant] was on top of me and it hurt and he was inside me and he had my hands up and had his hand on my— it hurts and then I was screaming but I really couldn’t really scream and then all of a sudden there it was, like I was in the bathroom and I had some blood and [Suer and Walker] were there. [Suer] was on the floor and he was wiping up little droplets of blood, and then he knew I was trying to wipe myself down there and then — I don’t know. And then it was just like I can’t believe this just happened.
 

 |sThe victim testified that she believed she lost consciousness because when she woke up with the defendant on top and inside of her forcibly raping her. The victim testified that she remembered telling the defendant to “Get off’ and “No.” She did not think the defendant said anything. The victim responded negatively when asked if she could have agreed to
 
 *454
 
 have consensual sex with the defendant. The victim thought the defendant ejaculated. However, she was not a hundred percent sure, because she was “really freaked out.” The victim also testified that, at that moment, she could not have even determined if the defendant was wearing a condom. The victim testified that she never told the defendant that she wanted to have sex with him, nor did she do anything to make him think it would be okay to do what he did. The victim explained that the defendant was much older, and she did not think of their association in that way. The victim also denied masturbating in defendant’s bed. The victim testified that she did not know how she got the bruises on her body or the cut on her hand because she was in a daze after the rape. However, she was sure she had not had the bruises all night.
 

 The victim then went to Suer’s sister house with Suer and Walker. Shortly thereafter, the victim dropped Walker and Suer back at the defendant’s apartment. The victim testified that, when the shock began the wear off, she called the police and told them everything she could remember because she had begun to forget things that happened. The victim testified that she told the police that she thought that the defendant had put something in the drink he gave her. After she contacted the police, the victim testified that she went to the hospital.
 

 Both Walker and Suer identified the defendant in court. Both Walker and Suer testified that they knew the victim through the defendant. However, Walker testified that the victim told her that she was not involved with the defendant.
 

 RWalker and Suer both testified that the victim came by the defendant’s apartment earlier in the evening between 9:00 and 10:00 p.m., on the date of the incident. Both Walker and Suer testified that the victim smoked marijuana before she left. Walker and Suer both testified that they were at the defendant’s apartment, when the victim arrived intoxicated, at approximately 4:00 a.m. Walker described the victim as, “[l]ike tipsy drunk, like not oblivious to the world but pretty drunk.”
 

 Walker and Suer testified that, after the victim arrived, the defendant made the victim a drink, orange Kool-Aid. Walker testified that after the victim drank it, “she like zoned out. She wasn’t there like at all anymore.” Walker and Suer both testified that they told the victim to lie down in the defendant’s bed because she was incapable of driving. Walker testified that she walked with the victim to the bedroom and laid her down. Walker did not remember telling the police that the victim asked the defendant if she could sleep there that night.
 

 Walker testified that afterwards she, Suer, and the defendant were in the front room, until the defendant went into the bedroom. Suer testified that they told the defendant to stay in the front room with them. Walker testified that she told the defendant not to enter the bedroom because she had a bad feeling. The defendant replied, “It’s my bed.” Walker admitted that she told the defendant and later the police that the victim was crazy. She also admitted telling the defendant and later the police that she thought if the defendant had sex with the victim that the victim would say that he raped her. When asked if the victim was conscious or awake at that time, Walker responded negatively.
 

 Suer testified that the defendant went into the bedroom but came out at their request. Both Walker and Suer testified that the defendant entered the bedroom again. At that time, the victim was not awake, but she was rubbing her hands. When asked if the victim had “com[e] onto the defendant at all,” Walker replied
 
 *455
 
 |Bnegatively. Walker also responded negatively when asked if she had seen the victim masturbating the defendant. In addition, Walker responded negatively when asked if the victim had done anything to herself. Walker denied that the victim had been masturbating or that she told the police that the victim had masturbated. Walker admitted that if she said that that she had misunderstood the police officer’s question.
 

 In her police statement that was read in court, Walker stated that they entered the bedroom when they initially heard the victim making noises. The defendant, who was rubbing the victim’s back, told them the victim was making noises because she was playing with herself. When she lifted up the cover, Walker saw the victim rubbing her hands together.
 

 Suer testified that the defendant went into the bedroom again and shut the door. After Walker continued to hear noises, she told Suer to go in there to see what was happening. Walker testified that Suer walked through the bedroom, and when Suer returned, he said, “[m]y nigger Dave is getting some pussy.” Suer denied making the aforementioned statement to Walker.
 
 [4]
 

 Walker testified that she jumped up and called the defendant. Suer testified that he and Walker banged on the door. However, the defendant would not let them inside. Suer stated that later when he entered the bedroom the defendant was on top of the victim forcibly raping her with his hand over the victim’s mouth.
 
 [5]
 
 Walker testified that when she walked into the bedroom, “[the victim] sat up and said, ‘He raped me.’ ” Suer testified that the defendant jumped off the victim. Then, the victim repeated twice that she was raped. Suer described the victim as crying and hysterical. Suer testified that the defendant denied raping her.
 

 | fiWalker testified that she brought the victim into the bathroom. Walker described the victim as shaken up and in shock. Walker testified that the victim told her again that the defendant raped her. According to Walker, she told the victim to get cleaned up and they would leave. Walker testified that the victim had blood between her legs. Walker testified that when Suer walked into the bathroom, the victim also told him that the defendant had raped her. Suer testified that after the victim showed them her “private area.” It appeared to Suer that the victim had been raped. Walker testified that she stated, at that time, that she believed the victim. According to Walker, Suer stated that he believed the victim as well.
 

 Walker and Suer left and brought the victim to Suer’s sister for advice. According to Suer, during the drive, the victim told them what happened. Walker described the defendant as “acting very weird” when they returned to the defendant’s apartment to gather their belongings. Walker testified that the defendant said, “ ‘What if they try to press charges on me?’ ” Walker testified that she told the defendant that if he did not do anything, then he did not have to worry. In response, the defendant told Walker that the victim had done things to put his semen on her. Walker repeated her previous advice.
 

 Both Walker and Suer testified that, after the incident, they no longer lived
 
 *456
 
 with the defendant. Walker testified that they left because she was pregnant and expecting a daughter. Walker admitted that she pled guilty to credit card fraud and received one year of probation.
 

 Suer admitted that he was currently incarcerated for attempted simple robbery, resisting arrest, aggravated flight from the police, police battery, and reckless operation of a vehicle. Suer also admitted that he had a 2003 conviction for selling marijuana.
 

 Craig Louis Bonnette, a former detective with the Jefferson Parish Sheriffs Office Sex Crime Division, testified that he participated in the investigation of the 17rape call involving the defendant. He subsequently executed an arrest warrant for the defendant and a search on the defendant’s apartment. He collected bed sheets, clothing, and a towel, as well as an orange liquid that the victim reported might have something in it used to drug her. Bonnette subsequently took a statement from the victim. During her statement, Bonnette noticed a cut in palm of the victim’s left hand. Bonnette testified that the victim told him the bruises on her body were the result of injuries sustained during the rape. She told him that the bruises were not on her body before the rape.
 

 Dr. Rickman Caplan, an obstetrician/gynecologist, testified that he examined the victim on the date of the incident. Dr. Caplan observed bruises on the victim’s leg, hand, and knees. In addition to these observed injuries, Dr. Caplan observed scratches on the victim’s left hand. Dr. Caplan also noted that the victim was moderately upset throughout the entire examination. During the pelvic examination, Dr. Caplan found no signs of tears, scratches, or cuts. Dr. Caplan testified that a woman, who had previously been sexually active, could be raped and not have any tears. Dr. Caplan agreed that he also found no blood in the victim’s “female anatomy.” However, he opined that stretching a vagina to achieve penetration could have caused a little bleeding, at the time, that he would not have seen during the examination because there was not a tear. He also found no sperm in the victim’s vagina. Dr. Caplan also testified that he found no injuries or redness on the victim’s face around her mouth.
 

 The State offered the following stipulation that was accepted by the defense.
 

 The first stipulation is that if Pam Williams were called she would be qualified as an expert in the field of forensic serology and that she would testify that she examined three specimens: Specimen 1, a sexual assault kit; Specimen 2, underwear from the victim, Specimen 10, a red terry cloth face towel, and that she came up with the results as they are listed on this report and the results are that seminal fluid was identified on the vaginal swabs that were collected by Dr. Caplan; that seminal fluid was detected on the blue print underwear that was the victim’s; and that on Specimen Number 10, | sthe terry face towel. There was both seminal fluid and sperm identified....
 

 The defense offered the following stipulation, “[t]he second stipulation is that ... between 1989 and 1990 [the defendant] had a vasectomy and has had no reverse procedure done since that date.” The defense stipulation was accepted by the State.
 

 Ann H. Montgomery, an expert in the forensic DNA analysis, testified that she took DNA reference samples from both the victim and the defendant for referential comparisons. The DNA testing of the vaginal swab from the victim produced no results, which indicated that there were no sperm cells present. However, the swab was positive for seminal fluid. According
 
 *457
 
 to Montgomery, a man who had a vasectomy would not be expected to produce sperm cells. The sample taken from the victim’s panties was also positive for seminal fluid. However, there were no sperm cells seen. The only DNA found on the victim’s panties was consistent with the reference sample taken from the victim. The DNA test results from the sperm cells taken from a towel found at the scene was consistent with a male donor, who was not the defendant. These DNA results were also inconsistent with the reference sample taken from the victim.
 

 DISCUSSION
 

 The defendant argues that the evidence was insufficient to support the jury verdict convicting him of simple rape. The defendant claims that the trial testimonies of Walker and the victim are inconsistent with their respective police statements. In particular, the defendant asserts that the victim’s testimony is inconsistent relative to the elements of the crime.
 

 The defendant also claims that the testimonies of Walker, Suer, and the victim are all inconsistent concerning the victim’s level of intoxication. The defendant contends that there was no proof that there was an intoxicating agent in [9the drink given to the victim by the defendant, since the substance was never tested.
 

 In addition, the defendant claims that there was no proof that the victim was forcibly raped. In fact, the defendant notes that Walker testified that she never saw the rape committed. Also, Suer is attributed with a statement about the sexual act that suggests that it was consensual. The defendant also claims that there was no proof that the victim was incapable of resisting and understanding the situation. The defendant suggests that, if the victim was attempting to call for help and defend herself, that she was conscious and aware of the circumstances.
 

 Finally, the defendant contends that the testimony of Dr. Caplan and Montgomery did not substantiate the victim’s accusation. In fact, the defendant claims that the physical evidence presented through the testimonies of Dr. Caplan and Montgomery contradicts the State’s contention that the victim was raped. Specifically, the defendant claims that there was no evidence of tears, scratches, or cuts in or around the victim’s vagina. There was also no bruising on the victim’s neck, mouth, or thighs. In addition, the seminal fluid on the vaginal swab and the towel did not match the defendant’s DNA.
 

 The State asserts that the evidence present was constitutionally sufficient to support the defendant’s conviction. The State contends that it proved, through the testimony of Walker, Suer, and the victim, that the victim was so incapacitated because of the intoxicating agent that she was unable to understand or know what was transpiring around her. The State contends that the varied terms used by the witnesses to describe the victim’s state of inebriation were not contradictory because they all were used to convey the idea that the victim was intoxicated.
 

 The State argues that it proved that the defendant knew or should have known about the victim’s incapacity because both Walker and Suer, who were present in the apartment, testified that they tried to prevent the defendant from |inentering the bedroom where the incapacitated victim was lying on the bed. Furthermore, the State asserts that it proved through the testimony of the victim that the defendant may have drugged her. In addition, the State claims that it proved that the victim was so incapacitated by the intoxicating agent that she did not even wake up until the defendant was already raping her. The State also claims it proved through the testimony of the victim that the defen
 
 *458
 
 dant continued to rape the victim after she awoke while holding her hands and covering her mouth. The State notes that in his testimony Suer denied ever making the statement attributed to him that suggested that the sexual act between the victim and the defendant was consensual.
 

 Finally, the State claims that the victim’s testimony is consistent with the physical evidence. According to the State, Dr. Caplan’s testimony about the physical findings was not inconsistent with the victim’s testimony that she experienced a small amount of bleeding after the rape. In addition, Montgomery did not testify that the defendant was excluded as the donor of the seminal fluid found on the vaginal swab and the victim’s panties. Rather, Montgomery testified that no sperm cells were found in the samples, which is consistent with the stipulated fact that the defendant had a vasectomy. The State also claims that there was no testimony linking the victim to the towel on which the DNA from a male donor, not the defendant, was found.
 

 The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
 

 All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 State v. Rogers,
 
 99-1378, p. 6 (La.App. 5 Cir. 11/28/00), 772 So.2d 960, 964,
 
 writ denied,
 
 01-0204 (La. 2001) 802 So.2d 641. The appellate court is required to consider the whole record and determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 State v. Watson,
 
 02-1154, p. 10 (La.App. 5 Cir. 3/25/03), 844 So.2d 198, 205,
 
 writ denied,
 
 03-1276 (La.5/14/04), 872 So.2d 506. It is not the function of the appellate court to re-evaluate the credibility of witnesses, reweigh the evidence, or to overturn the factual determination of guilt.
 
 State v. Wallace,
 
 00-1745, p. 8 (La.App. 5 Cir. 5/16/01) 788 So.2d 578, 584,
 
 writ denied,
 
 01-1849 (La.5/24/02), 816 So.2d 297.
 

 LSA-R.S. 14:41 states in pertinent part:
 

 A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
 

 B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
 

 See also, State v. Ward,
 
 04-1295, p. 7 (La.App. 5 Cir. 4/26/05), 903 So.2d 480, 484,
 
 writ denied,
 
 05-1718 (La.3/17/06), 925 So.2d 533.
 

 Simple rape is defined in pertinent part as:
 

 A. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
 

 (1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim’s incapacity.
 

 LSA-R.S. 14:43.
 
 See also, State v. Williams,
 
 05-673, p. 6 (La.App. 5 Cir. 3/14/06), 926 So.2d 665, 670 n. 6,
 
 writ denied,
 
 06-0870 (La.10/13/06), 939 So.2d 360.
 

 
 *459
 
 Therefore, in the present case, the State had to prove that the vaginal sexual intercourse with the female victim was committed without the lawful consent of l^the victim because it was committed when the victim was incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent, i.e. alcohol, or any cause, that the offender knew or should have known of the victim’s incapacity, and that there was any sexual penetration, however slight. See, LSA-R.S. 14:41 and LSA-R.S. 14:43(A)(1).
 

 Simple rape emphasizes the incapacity of the victim to give lawful consent to sexual intercourse because of a stupor caused by an intoxicating agent or other cause.
 
 State v. Chandler,
 
 41,063, p. 9 (La.App. 2 Cir. 9/8/06), 939 So.2d 574, 580,
 
 writ denied,
 
 06-2554 (La.5/11/07), 955 So.2d 1277. In order to convict the defendant, the State has the burden of proving that the victim could not consent because she was in a “stupor” or abnormal condition of mind produced by intoxicating agent, i.e., alcohol.
 
 See, State v. King,
 
 99-1279, p. 4 (La.App. 5 Cir. 4/25/00), 760 So.2d 540, 542,
 
 writs denied,
 
 00-1498 (La.3/16/00), 787 So.2d 298 and 00-1452 (La.3/16/01), 787 So.2d 298;
 
 State v. Porter,
 
 93-1106, p. 10 (La.7/5/94), 639 So.2d 1137, 1143. A defendant can be convicted of simple rape when the victim’s capacity to resist was negated by an abnormal condition or state of mind caused by alcohol consumption.
 
 State v. Porter,
 
 93-1106 at 10, 639 So.2d at 1143. In sexual offense cases, the victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even though the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.
 
 State v. Dixon,
 
 07-915, p. 11 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153-54
 

 In the present case, we find that the State presented sufficient evidence to support the defendant’s conviction for simple rape. The State proved through the testimony of the victim, Walker, and Suer that the victim was incapable of understanding or resisting because of an intoxicating agent, and that the defendant |i3vaginally penetrated her without her consent.
 
 See, State v. Porter, supra,
 
 639 So.2d at 1143.
 

 The victim, A.H., testified that she previously had a couple of drinks at the party before visiting the defendant again. However, after she drank something given to her by the defendant everything got “really blurry,” and she felt really sick, drowsy, and tired. The victim testified that she believed she lost consciousness. The victim testified she told the police that she thought that the defendant had put something in the drink he gave her.
 

 Walker and Suer testified that the victim smoked marijuana earlier in the evening while at the defendant’s apartment, and that when the victim returned later she was intoxicated. Both Walker and Suer testified that, after the victim consumed a drink made for her by the defendant she appeared to lose consciousness.
 

 In addition, the victim testified that she believed she lost consciousness because she woke up with the defendant on top and inside of her forcibly raping her. According to the victim, she could not really scream. The next thing she remembered was being in the bathroom. She had blood on her. There were also droplets of blood on the floor. The victim described herself as “really freaked out.” According to the victim, she could not have agreed to have consensual sex with the defendant. The victim testified that she never told the defendant that she wanted to have sex with him, nor did she do anything to make him think it would be okay to do what he did.
 

 
 *460
 
 According to Suer, when he entered the bedroom the defendant was on top of the victim forcibly raping her with his hand over the victim’s mouth. Both Walker and Suer testified that the victim stated several times that the defendant raped her. They described the victim as shaken, in shock, and hysterical. Walker testified that the victim had blood between her legs. Suer testified that the victim | ushowed him her private area, and it looked like she had been raped. Both Walker and Suer testified that they believed the victim had been raped.
 

 Dr. Caplan testified that he found no signs of tears, scratches, or cuts during the victim’s pelvic examination. However, according to Dr. Caplan, a woman who had previously been sexually active, could be raped and not have any tears. The defendant testified that she had been previously sexually active. Dr. Montgomery testified that, while no sperm cells were found on the vaginal swab, a man who had a vasectomy would not be expected to produce sperm cells. The defense stipulated that the defendant had a vasectomy.
 

 Louisiana courts have found sufficient evidence to support a conviction for rape in the absence of physical evidence where the victim identified the defendant as the perpetrator and the examining physician explained the reason for the lack of physical evidence.
 
 State v. Wallace, supra,
 
 00-1745, 788 So.2d at 582; See also,
 
 State v. Tapps,
 
 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995,
 
 writ denied,
 
 02-2921 (La.4/21/03), 841 So.2d 789.
 

 In addition, the State proved through the testimony of Walker and Suer that the defendant knew or should have known of the defendant’s incapacity. Walker and Suer testified that the victim smoked marijuana earlier in the evening while at the defendant’s apartment, and that when the victim returned later she was intoxicated. The victim testified that, after she drank a drink made for her by the defendant, she became drowsy and tired. Both Walker and Suer testified that, after the victim drank a drink made for her by the defendant, the victim appeared to lose consciousness. Walker and Suer both testified that they advised the defendant not to go into the bedroom because of the victim’s condition. Suer testified that the defendant left the bedroom once at his and Walker’s request. However, the defendant later returned to the bedroom and closed the door.
 

 11sBased on the evidence presented by the State, the jury could have found that the State proved all the elements of the crime and, therefore, the defendant was guilty of simple rape beyond a reasonable doubt.
 

 ERROR PATENT DISCUSSION
 

 The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals that there are errors patent in this case which require corrective action.
 

 First, the record does not reflect that the defendant was notified of the sex offender registration requirements. The defendant’s conviction of simple rape is defined as a sex offense by LSA-R.S. 15:541(14.1). LSA-R.S. 15:542 outlines mandatory registration requirements for sex offenders. LSA-R.S. 15:543(A) mandates the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of LSA-R.S. 15:542. The written notification to any defendant shall be included on any guilty plea forms and judgment and sentence
 
 *461
 
 forms provided to the defendant. LSA-R.S. 15:543(A).
 
 See, State v. Patterson,
 
 05-560 at 17, 922 So.2d at 1205.
 

 This Court has recognized the failure of the trial court to give the notice as an error patent.
 
 State v. Torregano,
 
 03-1335, p. 11 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 850. This Court has previously held that this omission warrants a remand for written notification.
 
 State v. Patterson,
 
 05-560 at 17, 922 So.2d at 1205. We therefore remand the case to the trial court with an order for the trial judge to inform defendant of the registration requirements as provided in LSA-R.S. 15:543(A), by sending appropriate written notice to the defendant, within ten days of this Court’s opinion, and to file written proof in the record that defendant received such notice.
 
 State v. Patterson,
 
 05-560 at 17, 922 So.2d at 1205-06.
 

 11BSecondly, the sentencing transcripts indicate that the trial judge did not correctly inform the defendant of the period in which to file for post-conviction relief. LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. This Court has previously held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete.
 
 See, State v. Roche,
 
 05-237, p. 11 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767,
 
 writ denied,
 
 06-1566 (La.1/8/07), 948 So.2d 120. Therefore, we remand the case and order the district court to inform defendant of the proper prescriptive period for filing post-conviction relief by sending written notice of the provisions of LSA-C.Cr.P. art. 930.8 to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice.
 
 State v. Strickland,
 
 04-843, p. 17 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 896,
 
 writ denied,
 
 05-0820 (La.6/17/05), 904 So.2d 683.
 

 CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . The defendant alleged that, in both prior convictions, he was not informed of his right to confront and cross-examine the witnesses against him. The trial judge found that the defendant's two guilty pleas, in cases 96-1317 and 99-2828, were knowingly and intelligently entered.
 

 [2]
 

 . Pursuant to LSA-R.S. 46:1844(W), the initials of the victim will be used throughout this memorandum. In addition, if necessary, the initials of the victim of the defendant's prior sex offense will also be used to protect her identity.
 
 State v. Patterson,
 
 05-560, p. 3 (La.App. 5 Cir. 1/31/06), 922 So.2d 1195, 1198, n. 1,
 
 writ denied,
 
 06-1191 (La.3/16/07), 952 So.2d 687.
 

 [3]
 

 .At trial, Brittany Marie Walker and Ricky Suer both testified that they lived with the defendant in his one-bedroom apartment in 2003, on Harvard Avenue in Jefferson Parish.
 

 [4]
 

 . Craig Louis Bonnette, a former detective with the Jefferson Parish Sheriff's Office Sex Crime Division, testified that Walker told him that Suer made the statement. Bonnette testified that he did not interview Suer.
 

 [5]
 

 . The State introduced a letter from Suer in which he stated that he walked in on the defendant while he was raping the victim.