MARC E. JOHNSON, Judge.
[¿Defendant, John H. Williams, Jr., appeals his conviction and sentence for simple rape from the 24th Judicial District Court, Division “D”. For the following reasons, we affirm Defendant’s conviction and sentence. Furthermore, the matter is remanded with instructions.
FACTS AND PROCEDURAL HISTORY
On August 5, 2011, the Jefferson Parish District Attorney filed a bill of information charging Defendant with simple rape upon a known female, D.B. (DOB 4/8/1968), in violation of La. R.S. 14:43 (count one).[1] Defendant was arraigned on August 22, 2011 and pleaded not guilty. On June 5, 2013, the State amended the bill of information to also charge Defendant with simple rape upon a known female, R.L. (DOB 1/2/1975), in violation of La. R.S. 14:43 (count two). |3On August 1, 2013, Defendant was arraigned on count two of the amended bill of information and pleaded not guilty. On November 19, 2013, the State amended count two of the bill of information to show that the offense occurred on or between October 28 and November 3, 2009. Defendant was re-arraigned on the amended bill and pleaded not guilty. On November 19 and 20, 2013, Defendant was tried before a six-person jury.[2]
At trial, D.B. testified that in early 2009, she went to River Oaks Psychiatric Hospital to obtain treatment for her drug addiction, after which she “stayed clean” for six or seven months and then relapsed. On October 26, 2009, she checked in to River Oaks a second time to obtain additional treatment for her drug addiction. D.B. explained that she had abused heroin on October 26 and the night before. She further explained that she had not been sleeping or eating; she was very “dope sick;” her body ached and hurt; she was sweating, vomiting, cold and had diarrhea; and she felt like bugs were crawling on her. D.B. felt ashamed and embarrassed and did not want to be around people because she was scared and had hallucinations that someone was “out to get her.” When D.B. arrived, she signed a voluntary admission form and was advised of the rules and guidelines, one of which prohibited sexual contact.[3] She asked for “Big John” (Defendant), whom she had met the first time she was at River Oaks, because he was a familiar person, and she needed to feel safe.[4] D.B. was eventually led to *1133 her room and was able to get some rest while she was detoxing.
D.B. subsequently asked Defendant for some towels. Afterward, she went to take a shower. As she did so, she could feel someone rubbing her and bathing her. 14When she looked up, she saw Defendant. D.B. told Defendant that he was not supposed to be in there (because males were not supposed to be by themselves in rooms with females), and that he was going to get in trouble. Defendant replied that he was not going to get in trouble, and he left the room. At some point, D.B. got out of the shower, went and smoked a cigarette, and then lied down on her bed. Afterward, she asked for a blanket, and Defendant brought her one.
Because she was not feeling well and was given medication, D.B. got into bed in the fetal position facing the wall. Someone came into her room, whom she thought was her roommate. D.B. then heard Defendant ask if she was “ready.” D.B. explained that she was sick and medicated, and that she felt “paralyzed” and could not say anything, move or resist. Next thing she knew, Defendant was inside of her penetrating her vagina. D.B. testified that she was on her knees on her bed and that Defendant was behind her with his hips going back and forth having sex with her. She next remembered that Defendant was standing at the door zipping up his pants. After crying, D.B. went to the bathroom because her underwear, which was worn when Defendant raped her, was wet from the leakage following the rape.[5]
D.B. testified that she did not tell anyone right away because she was afraid that if she did, they would force her to leave River Oaks. She knew that if that happened, she would start using drugs again and die. At some point, D.B. was moved from the detox unit to the trauma unit to deal with other emotional issues. Approximately one week later, she told Danielle Slavich, one of the technicians, that Defendant raped her. D.B. said that Slavich was the first person she told about the rape. A woman from human resources came and wrote a report, and the | Bwoman told D.B. that it was her responsibility to call the police. D.B. subsequently called the police on her cell phone; however, it was three days before an officer came.
D.B. met with Detective Nicholas Cot-tone several times and told him what happened. River Oaks subsequently forced D.B. to leave the hospital, even though D.B. and her husband pleaded with them to let D.B. stay for treatment. She testified that she had been “clean” for more than four years since she left River Oaks, and that she assisted others with overcoming addiction. D.B. positively identified Defendant in court as the person who raped her.
Danielle Slavich testified that she was employed at River Oaks as a psychiatric technician in the detox unit. At some point, D.B. was moved to the trauma unit. When Slavich went to see D.B. to make sure she was settled in, D.B. said that she had something to tell her. D.B. was upset that Slavich had not figured out that something had happened to her. When Slavich asked D.B. what she was talking about, D.B. told her that Defendant raped her. D.B. told Slavich that when she got up to go to the bathroom after she was raped, she had a discharge from when Defendant “came” in her.
*1134 Mary Preen testified that she worked at River Oaks Hospital. She reviewed assessment forms and progress. notes completed at the hospital regarding D.B. Preen stated that the admissions assessment indicated that D.B. was exhibiting detox symptoms: she was tearful; her husband had left her on Saturday; she had relapsed two weeks prior; she was on crack/heroin; and she had tremors, sweats, and chills and was restless and suicidal. Preen further stated that another form indicated that D.B. was not capable of forming judgments for safety; there was an “emergency psychiatric disturbance;” she required medical supervision during detoxification; and she was “gravely disabled.” She testified that the note on | (-.October 26, 2009, at 10:20 p.m., showed that D.B. was actively detoxing and not feeling well, and that comfort medications were given to her. The records also showed that on December 7, 2009, D.B. requested a test for sexually transmitted diseases due to a reported sexual assault while in the hospital; and that on December 9, 2009, D.B. reported she was raped.
Detective Nicholas Cottone of the Jefferson Parish Sheriffs Office testified that on January 14, 2010, he took a taped statement from D.B. at the detective bureau. He also prepared a photographic lineup that he showed to D.B. D.B. picked out photograph number two (Defendant) as the individual who raped her. .Detective Cottone then prepared a search warrant and obtained D.B.’s records from River Oaks. On August 11, 2010, Detective Cot-tone took two taped statements from Defendant after he was advised of and waived his rights.
In his first statement dated August 11, 2010, at 3:28 p.m., Defendant said that he went into D.B.’s room. While D.B. was behind the shower curtain, she stuck her face out and asked what he was doing, and that he responded he was doing his rounds and left. Defendant further said that, at the end of his shift, he went into D.B.’s room and saw that D.B. was in the wrong bed. He touched her on her legs and told her she needed to go to the other bed. D.B. moved to the other bed, after which she grabbed his penis and unzipped his pants. Defendant put the tip of his penis near her vagina. When Defendant realized what he was doing, he stopped and said he had to go. Defendant denied penetrating D.B. He indicated that D.B. was on “all fours bent over” in a “doggy style position.” Defendant admitted that he went there, “went to it,” but did not go “all the way into it.” He also admitted that going into her room was a bad decision.
In his second statement dated August 11, 2010, at 3:56 p.m., Defendant said that the tip of the head of his penis went inside D.B.’s vagina, and they had sex for 17approximately thirty seconds, but he did not think he ejaculated. Defendant also indicated that although D.B. made the decision to have sex with him, he did not think D.B.’s mind was in the “right place,” as the medicine being used to detox her was affecting her. He stated that D.B. was “talking out her head,” and that the medicine makes “you sleepy where you have to go you know lay down.”
Dr. William George, who was qualified as an expert in the fields of pharmacology and toxicology, testified that he reviewed D.B.’s records from River Oaks. He stated that D.B. took numerous drugs from October 26 through October 28 or 29, 2009, that contained significant central nervous system depressant properties. It was his opinion that D.B. would have been significantly impaired and sedated as a result of those drugs and that her reaction time and other behaviors could have been impacted. Dr. George testified that there were approximately 14 drugs that were of *1135 significance, but the ones with the greatest significance were Zanaflex, Phenergan, Seroquel, Suboxone or Subutex, Wellbut-rin, and Benadryl.
Dr. George explained that Zanaflex is a skeletal muscle relaxant with significant sedative properties, and that the literature showed that it caused sedation in 92% of people taking it. He stated that the drug has a warning that mental alertness may be impacted and that other central nervous system depressants should be avoided because the sedative effects of both drugs would be greater. Dr. George also explained the drug causes somnolent sedation and dizziness at 16 milligrams per day. He stated that D.B. was given Zana-flex six times between October 26 and October 28, 2009, at a dose of eight milligrams twice a day.
According to Dr. George, Phenergan is an antihistamine and an antinauseant often used as a sedative and to prevent vomiting and nausea when narcotics were Rbeing withdrawn, as in the instant case. He testified that 50 milligrams of Phenergan was administered to D.B. every six hours, and that it was given once on October 26, three times on October 27, once on October 28, once on October 29, and once on October 30. Dr. George stated that Se-roquel is an antipsychotic agent used to treat schizophrenia and manic depression. He testified that the common side effects of Seroquel are sedation and dizziness. Dr. George stated that it was given to D.B. at 9:00 p.m. on October 26, October 27, and October 28 at 100 milligrams to cause sedation or sleepiness.
Dr. George testified that Subutex is a trade name for Buprenorphine, which is a drug that had morphine-like properties and antagonistic properties. He explained that an antagonist could be used to decrease tolerance to help people withdraw from drugs • more easily. Dr. George stated that Subutex was administered to D.B. on October 27 and 28, after which it was switched to Suboxone which was given on October 28 and 29. He next discussed Wellbutrin, which he explained is an antidepressant with the side effects of dizziness, agitation, sedation, confusion, and diminished concentration. Dr. George testified that D.B. was given Well-butrin on October 28, 29, 30, and 31. As for Benadryl, Dr. George explained that it is an antihistamine, very significantly causes sedation, is used for allergies and motion sickness, and that 50 milligrams were administered to D.B. each night at 9:00' p.m. on October 28, 29, and 30.
Wanda Hoffman, Director of Human Resources at River Oaks and custodian of employee records, testified that Defendant was hired on December 2, 2008, and was terminated on November 16, 2009, for failure to follow standard practice and for patient safety violation.
At the end of the trial, the jury found Defendant guilty as charged of the simple rape of D.B. Defendant filed a motion for new trial on December 16, |fl2013, which was denied that same day. After Defendant waived sentencing delays, the trial judge sentenced him to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence. On July 25, 2014, Defendant filed a motion for out-of-time appeal, which was granted. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Defendant alleges: 1) there was insufficient evidence to convict him of simple rape, and 2) the trial court erred in imposing an excessive sentence.
LAW AND ANALYSIS

Sufficiency of Evidence

Defendant argues that the evidence was insufficient to support the simple rape con *1136 viction. He contends that the State failed to prove that D.B. was incapable of resisting or understanding the nature of the sexual act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause as required by La. R.S. 14:48.
The State responds that it. presented sufficient evidence to establish that Defendant committed the offense of simple rape of D.B. The State further responds that there was ample evidence to establish that D.B. was under a stupor or abnormal condition of mind produced by an intoxicating agent and that D.B. was incapable of understanding the nature of the sexual act with Defendant. The State also asserts that it produced sufficient evidence to establish that the drugs taken by D.B. prior to being admitted to River Oaks and the medications prescribed to D.B. upon being admitted to River Oaks placed her in a mental stupor or abnormal condition of mind.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04); 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02); 811 So.2d 1015, 1019.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01); 806 So.2d 718, 722. The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every, reasonable hypothesis of innocence. La. R.S. 15:438. On appeal, the reviewing court does not determine if another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Instead, the appellate court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could, not have found proof of guilt beyond a reasonable doubt. State v. Durand, 07-4 (La.App. 5 Cir. 6/26/07); 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08); 973 So.2d 753. The reviewing court must not impinge on the jury’s finding of fact, in a criminal case, except to the extent necessary to guarantee constitutional due process. State v. Mitchell, 99-3342 (La.10/17/00); 772 So.2d 78, 83.
| uDefendant was convicted of simple rape in violation of La. R.S. 14:43, which is defined in pertinent part as follows:
A. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim’s incapacity.
*1137 (2) When the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act and the offender knew or should have known of the victim’s incapacity!)]
La. R.S. 14:41 defines rape in pertinent part as follows:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime[.]
In sexual offense cases, the victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even though the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08); 982 So.2d 146, 153-54. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Williams, 05-673 (La.App. 5 Cir. 3/14/06); 926 So.2d 665, 671, writs denied, 06-870 (La.10/13/06); 939 So.2d 360; 10-2737 (La.6/3/11); 63 So.3d 1017 (citing State v. Robinson, 02-1869 (La.4/14/04); 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004)).
In the instant case, the State presented witnesses to prove that Defendant raped D.B.; D.B. was incapable of resisting or understanding the nature of the | ^sexual act due to unsoundness of mind or by reason of a stupor or abnormal condition of mind caused by intoxicating agents; and Defendant knew or should have known of D.B.’s incapacity.
D.B. testified that on October 26, 2009, she went to River Oaks to obtain treatment for her drug addiction. She explained that she had abused heroin before arriving at River Oaks; she had not been sleeping or eating; she was very “dope sick;” her body ached and hurt; she was sweating, vomiting, had diarrhea, and was cold; and she felt like bugs were crawling on her. D.B. subsequently took medication prescribed by the doctor and laid in bed. While there, Defendant entered her room and asked if she was “ready.” D.B. explained that she was sick and medicated and that she felt “paralyzed” and could not say anything, move or resist. Next thing she knew, Defendant was penetrating her vagina with his penis. D.B. next remembered Defendant standing at the door zipping up his pants. She testified that she did not consent to the sexual act.
Mary Preen, an employee of River Oaks, corroborated D.B.’s testimony in part. She stated that the admissions assessment indicated that D.B. was exhibiting detox symptoms. Preen also stated that another form indicated that D.B. was not capable of forming judgments for safety, that there was an “emergency psychiatric disturbance,” and that she was “gravely disabled.” A note dated October 26, 2009, at 10:20 p.m., showed that D.B. was actively detoxing and not feeling well, and that comfort medications were given to her. Dr. George, an expert pharmacologist and toxicologist, testified that D.B.’s River Oaks records indicated that D.B. took numerous drugs from October 26 through October 28 or 29, 2009, that contained significant central nervous system depressant properties. It was Dr. George’s opinion that D.B. would have been significantly impaired and sedated as a result of |1sthose *1138 drugs, and that her reaction time and other behaviors could have been impacted.
The State also presented evidence that Defendant knew or should have known of D.B.’s incapacity. In his statements, which were admitted into evidence at trial, Defendant indicated that D.B. grabbed his penis, unzipped-his pants, and got on “all fours bent over” in a “doggy style position.” Afterwards, Defendant put his penis into D.B.’s vagina and had sex with her. Nevertheless, Defendant also indicated that although D.B. made the decision to have sex with him, he did not think D.B.’s mind was in the “right place” as the medicine used to detox her was affecting her. Defendant also stated that D.B. was “talking out her head,” and that the medicine makes “you sleepy where you have to go you know lay down.”
During his closing argument, defense counsel argued that Defendant was not guilty of raping D.B., since the evidence showed that D.B. asked for Defendant when she got to the hospital because he made her feel safe. Defense counsel also argued that D.B. spoke to Defendant about sexual matters,[6] and made the decision to have sex with him, after which she grabbed his penis, got in the “doggie position,” and had sex. Defense counsel further argued that the evidence showed that D.B. was not in a stupor because she and Defendant were talking to each other around the time of the sexual act. He also contended that the State did not call the actual doctor who treated D.B. and could testify as to her demeanor on the day in question, but rather, the State calléd an expert in pharmacology who only testified as to probabilities as to whether D.B. was in a stupor.
The jury considered the evidence presented at trial and found the State’s witnesses credible. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any 114witness; therefore, the credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97); 694 So.2d 1052, 1056.
In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to prove that Defendant committed the simple rape of D.B., that D.B. was incapable of resisting or understanding the nature of the sexual act due to unsoundness of mind or by reason of a stupor or abnormal condition of mind caused by intoxicating agents, and that Defendant knew or should have known of D.B.’s incapacity.

Excessive Sentence

Defendant argues that his 15-year sentence at hard labor without the possibility of probation or parole is constitutionally excessive, considering that he was a 38-year-old first-time offender who was married and religious, was employed until these allegations arose, and had the support of his family and friends. He contends that the-alleged offense was a huge miscommunication and mistake of judgment on his part. Defendant claims that after the alleged offense, D.B. remained close to him and showed no fear of him; D.B. did nothing to report the alleged offense for six weeks; all of D.B.’s reported problems pre-existed the alleged offense; and D.B. filed a civil lawsuit to compensate her. Defendant claims that the sentence should be vacated, and the *1139 case remanded to the trial court for a sentence not to exceed eight years.
The State responds that the sentence is not constitutionally excessive. It notes that prior to sentencing, the trial judge considered the aggravating circumstances, the victim impact statement, and the letters written on behalf of Defendant. The State asserts that the 15-year sentence is well below the maximum 25-year sentence Defendant was exposed to and is consistent with other sentences courts have imposed for simple rape convictions.
11fiThe record reflects that on December 16, 2013, at the sentencing hearing, the trial judge stated that he had reviewed letters submitted on behalf of Defendant. Afterward, D.B. presented her victim impact statement. She said that her life had been a “living nightmare,” and that she lives in fear. D.B. stated that her sentence started on October 26, 2009, and would never end. She explained that the offense had affected her mentally, spiritually, and emotionally, that her marriage was “gone,” and that she had trouble with relationships and herself. D.B. added that her “hell” was every day, and that it was time for Defendant’s “hell” to start. D.B. said that she had been “clean” for more than four years, and that she now helps other women.
Afterward, the trial judge said that he had considered the evidence presented at trial, the fact that Defendant had no prior criminal history whatsoever, and the letters written on Defendant’s behalf. He explained that Defendant was entrusted with an “awesome” responsibility to help the most downtrodden, and that Defendant had taken advantage of the victim. The trial judge stated that Defendant’s crime was “heinous,” and Defendant used his position of authority for his own gain when he took advantage of D.B. He also stated that although Defendant was acquitted of the other count of simple rape, he was terminated from his employment as a result of inappropriate behavior with that victim when Defendant locked himself in a room with her. The trial judge found that Defendant was in need of correctional treatment or a custodial environment. He subsequently sentenced Defendant to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence. Defense counsel noted his objection for the record. Defendant did not file a motion to reconsider sentence.
The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the | |f,sentence only for constitutional exces-siveness. State v. Ragas, 07-3 (La.App. 5 Cir. 5/15/07); 960 So.2d 266, 272, writ denied, 07-1440 (La. 1/7/08); 973 So.2d 732, cert. denied, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008); see also La.C.Cr.P. art. 881.1.[7]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Warmack, 07-311 (La.App. 5 Cir. 11/27/07); *1140 973 So.2d 104, 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08); 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09); 6 So.3d 767.
In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Berry, supra. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Williams, 03-3514 (La.12/13/04); 893 So.2d 7, 16. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. | wWarmack, 07-311; 973 So.2d at 109. “Sentence review under La. Const, 'art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case.” State v. Williams, 07-1111 (La.12/7/07); 969 So.2d 1251, 1252 (per curiam).
Courts have upheld 15-year or higher sentences for similarly situated defendants convicted of simple rape. (See State v. Jeansonne, 06-263 (La.App. 3 Cir. 5/31/06); 931 So.2d 1258, where the court upheld a 20-year sentence for a defendant who raped a 15-year-old neighborhood boy who was mentally and physically handicapped; State v. Despanie, 06-1269 (La.App. 3 Cir. 2/7/07); 949 So.2d 1260, writ denied, 08-1058 (La.2/6/09); 999 So.2d 775, where the court upheld a 25-year sentence for the defendant, a certified nursing assistant employed at a long-term care facility, who raped a 92-year-old female resident suffering from dementia; State v. Lott, 41,426 (La.App. 2 Cir. 9/27/06); 940 So.2d 722, where the court upheld a 20-year sentence for a defendant who raped a mentally disabled male; State v. Cleveland, 12-163 (La.App. 4 Cir. 4/10/13); 115 So.3d 578, writ denied, 13-926 (La.11/8/13); 125 So.3d 444, where the court upheld a 15-year sentence for a defendant who raped a highly intoxicated female.)
In the instant case, we find that the trial judge did not abuse his discretion in sentencing Defendant. First, we find that the record supports the sentence imposed. Defendant, who knew D.B. was not in her right mind due to the medications she had been given, used his position as a psychiatric counselor at River Oaks to take advantage of the victim. The victim was in a highly impaired state and very vulnerable at the time of the offense. Second, the 15-year sentence was far below the 25-year maximum sentence that could have been imposed. Lastly, courts have imposed similar sentences for similarly situated defendants.
|TSIn light of the foregoing, we find that the sentence imposed is not constitutionally excessive.

Error Patent Discussion

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Our review has revealed one error patent.
The State of Louisiana Uniform Commitment Order incorrectly states that the *1141 offense date was August 11, 2010, and that the adjudication date was December 16,' 2013. The bill of information and facts adduced at trial reflect that the offense occurred on October 26, 2009, and the record indicates that the jury returned its verdict on November 20, 2013. In order to ensure an accurate record, we remand this matter and order that the Uniform Commitment Order be corrected to reflect the correct offense and adjudication dates. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142. Further, we order the clerk of the trial court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department. Id. (citing La.C.Cr.P. art. 892(B)(2); State ex rel. Roland III v. State, 06-0244 (La.9/15/06); 937 So.2d 846 (per curiam)).
DECREE
For the foregoing reasons, Defendant’s conviction and sentence are affirmed.

AFFIRMED: REMANDED FOR CORRECTION OF COMMITMENT

. The victim’s initials are used under the authority of La. R.S. 46:1844(W)(3), which allows the Court to identify a crime victim who is a minor, or a victim of a sex offense, by using his or her initials.

. Defendant was found not guilty of the simple rape of R.L. Therefore, the remaining facts will only reference the rape of D.B.

. D.B. testified that sexual conduct was '.'the furthest thing from her mind,” and that she did not want to be touched.

. Mary Preen later testified that Defendant was employed at River Oaks as a psychiatric counselor.

. D.B. testified that she did not consent to having sex with Defendant, and she did not give Defendant any indication that it was permissible for him to have sex with her. She further testified that she was not looking for any sort of relationship or sexual contact, and she did not want anyone to touch her or be intimate with her.

. D.B. testified that when she and Defendant talked the first time she was at River Oaks, she probably told him that her husband would not have sex with her because of the drugs she was using.

. According to La.C.Cr.P. art. 881.1(E), the ”[f|ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”