STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-920

STATE OF LOUISIANA

VERSUS

FREDDIE NAVARRE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 146230
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and John E. Conery, Judges.

AFFIRMED.

Keith A. Stutes
Lafayette Parish District Attorney
Michele S. Billeaud
Lafayette Parish Assistant District Attorney
P. O. Box 3306
Lafayette, LA 70502-3306
Telephone: (337) 232-5170
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Carey J. Ellis, III
Louisiana Appellate Project
P. O. Box 719
Rayville, LA 71269
Telephone: (318) 728-2043
COUNSEL FOR:
    Defendant/Appellant - Freddie Navarre

**Freddie Navarre**
**St. Martin Sheriff's Office**
**P. O. Box 188**
**St. Martinville, LA 70582**
       **Defendant/Appellaant**

**THIBODEAUX, Chief Judge.**

Defendant Freddie Navarre appeals his conviction by a jury of aggravated rape of a juvenile under the age of thirteen. He alleges that the evidence was insufficient to sustain the verdict of aggravated rape.

For the following reasons, we affirm.

## ISSUE

We shall consider whether the evidence was insufficient to prove aggravated rape beyond a reasonable doubt.

## LAW AND DISCUSSION

Defendant's sole assignment of error is that the State failed to prove all the elements of aggravated rape. He argues the only evidence of the rape was the victim's testimony, which contained inconsistencies and irreconcilable conflicts with physical evidence; therefore, the evidence was not sufficient to sustain the verdict of aggravated rape.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Rape is defined as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). Louisiana Revised Statutes 14:42(A)(4),[1] in pertinent part, states:

> Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it was committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

Furthermore, it is well-settled jurisprudence that the testimony of a single witness is sufficient to support a conviction, absent internal contradictions or irreconcilable conflicts with physical evidence, even where the State does not introduce medical, scientific, or physical evidence. *State v. Williams*, 14-882 (La.App. 5 Cir. 5/14/15), 170 So.3d 1129. The credibility of the witness is a matter of weight, and not sufficiency, of the evidence, and the determination of credibility is left to the trier-of-fact's sound discretion and will not be re-weighed on appeal. *State v. Dixon*, 04-1019 (La.App. 5 Cir. 3/15/05), 900 So.2d 929; *State v. Hawkins*, 99-217 (La.App. 5 Cir. 7/2/99), 740 So.2d 768.

---

[1]All references to La.R.S. 14:42 are to the statute as it appeared in 2014, prior to its amendment by Acts 2015, Nos. 184 & 256.

2

The victim, C.M.,[2] who was sixteen at the time of trial, testified that between the sixth and eighth grades he attended St. Genevieve School. He lived with his father but visited his mother every other weekend. C.M. met Defendant through his mother, and initially it was a good relationship. Defendant would give him money and drive him to and pick him up from Skate Zone. However, one afternoon, C.M. and his mother visited Defendant in his trailer. C.M. became "excited" after watching pornography on Defendant's computer. He stated that Defendant noticed, took him into the back bedroom of the trailer, and performed oral sex on him. This was when C.M. was around ten years old. When C.M. complained, Defendant told him it was okay but not to tell anyone.

C.M. stated there were several more incidents of oral sexual contact between him and Defendant. Another act occurred when another man was in the trailer. C.M. said that Defendant attempted to anally penetrate him but it hurt too much, and C.M. made Defendant stop. C.M. described how Defendant attempted to penetrate him from different positions. C.M. also described one incident where Defendant asked C.M. to anally penetrate him. Defendant also took pictures of C.M. masturbating. C.M. stated that the sexual abuse stopped during the seventh or eighth grade, around his thirteenth birthday. C.M. said he told Defendant to stop, and Defendant did but warned him not to tell anyone.

C.M. testified he saw Defendant only once after the sexual activity stopped. C.M. told two of his friends of the sexual misconduct. C.M. said that he later told his father and stepmother about Defendant's sexual advances and abuse.

---

[2]The victim's initials are used to protect his identity. La.R.S. 46:1844(W).

On cross-examination, C.M. admitted that he lies on occasions, but he stated he would never lie just to get someone into trouble. He also said he had no grudge against Defendant.

Defendant was fifty-six years old at the time of trial. He testified that he had lived in Lafayette all his life. He never graduated from high school or obtained a GED certificate. He admitted he had a criminal history for car theft, simple burglary, and drug offenses. He stated that the victim's mother and his niece were close friends. He said that he gave C.M. money because his mother had no money. He believed C.M. made up the allegations so that he would not have to visit his mother anymore. Defendant claimed that C.M. only spent two nights at his place and that both times, C.M. brought a friend with him. He said he and C.M. were initially close friends, almost like family. While Defendant admitted he had had sexual relationships with other males, they were always over the age of eighteen. He denied ever touching C.M. inappropriately or having any kind of sexual interaction with him.

In brief, Defendant argues that there were internal contradictions or irreconcilable conflicts in C.M.'s testimony and that the details of the offenses were vague. Defendant points out that the victim was unable to give dates for the occurrences. Moreover, Defendant notes that the victim testified the first encounter occurred with his mother "asleep in the front of the Winnebago. This is where the computer was located. How could this have happened with C[.]M[.]'s mother so close?" Defendant notes that in C.M.'s father's affidavit prepared for the police, he stated that "C[.]M[.] told him that the Defendant had sodomized him five or six times, not two times as C[.]M[.] testified." Defendant argues that everyone—C.M.'s mother, his mother's boyfriend, and C.M.'s father—all testified

4

that C.M. was a liar. Additionally, Defendant points out that the details C.M. gave at trial were more extensive then the details he told to the child advocacy center. Finally, Defendant argues:

> An important fact to note is that the indictment states that Mr. Navarre committed this crime between the dates of September 9, 2009 and September 9, 2011. (Rec. p. 10). The Defendant was in jail from August 3, 2011, until February 2, 2012. . . . It would have been impossible for the Defendant to have committed any act after August 3, 2011, contrary to the indictment and the allegations of CM.

As noted above, the credibility of a witness goes to the weight of the evidence. The jury observed and heard C.M. testify as to what happened to him. While C.M.'s parents testified that C.M. was known to lie to them on occasions, they both stated that he would lie to get himself out of trouble but never lied solely to get someone into trouble.

Casie Barfield, a detective with the Lafayette Parish Sheriff's Office, was the lead detective in this case. Detective Barfield worked in the juvenile section and had extensive training in the physical and sexual abuse of children. The detective scheduled and observed an interview with the children's advocacy center for C.M. The detective testified that C.M.'s trial testimony was consistent with what he told the police and the children's advocacy interviewer. The detective noted it was not unusual for victims of sexual abuse to supply more details at trial, nor was it unusual for victims to wait for a few years before speaking out about the abuse. Finally, the detective stated that in these situations parents of sexual abuse victims often get the facts confused. The detective had no reason to believe that C.M. was not telling the truth.

While Defendant testified at trial that he thought C.M. made up the allegation of sexual abuse so he would not have to spend weekends with his mother, testimony established that both parents were all along well aware that C.M. did not like to go to his mother's because of her drug use and the fights she and her boyfriend would get into in front of him. There was no testimony that Defendant lived with C.M.'s mother and her boyfriend or that they hung around together all the time. C.M.'s mother testified he would visit with Defendant, and Defendant would help them out occasionally, but there was no testimony that C.M. was made to go over to Defendant's residence. There was no testimony given that established if Defendant was not available to visit, C.M. would not have to visit his mother.

The State proved all of the elements of aggravated rape beyond a reasonable doubt. The sexual acts commenced when the victim was ten or eleven years old. Defendant had oral and anal sex with the victim. Based on C.M.'s account, the indictment alleged that the acts were committed between September 9, 2009, two days before the victim's tenth birthday, and September 9, 2011, two days before the victim's thirteenth birthday. It is of no import that Defendant was in jail in August 2011. The indictment did not allege all of the offenses occurred in August 2011. According to C.M.'s testimony, the first act of rape occurred when he was ten or eleven. Defendant has failed to show internal contradictions or irreconcilable conflicts between C.M.'s testimony and the physical evidence in this case. C.M.'s testimony was sufficient to establish the elements of the offense.

## CONCLUSION

For the foregoing reasons, Defendant's conviction for aggravated rape and his sentence of life imprisonment at hard labor without probation or parole are affirmed.

**AFFIRMED**.